# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN HAYES,** *et al.* | ) | **Case No. 1:05 CV 028** |
| | ) | |
| **Plaintiffs,** | ) | **(Judge Watson)** |
| | ) | **(Magistrate Judge Black)** |
| **-v-** | ) | |
| | ) | |
| **DAVID J. DURHAM,** *et al.* | ) | **MOTION TO DISMISS OF** |
| | ) | **DEFENDANTS FIFTH THIRD** |
| **Defendants.** | ) | **BANCORP AND FIFTH THIRD** |
| | ) | **ASSET MANAGEMENT** |
| | ) | |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Fifth Bancorp and Fifth Third Asset Management, hereby move this Court for an Order dismissing the Complaint filed against them by Plaintiff, John Hayes ("Plaintiff"), for failure to state a claim upon which relief can be granted. The grounds for this Motion are set forth in the accompanying Memorandum in Support, and in the Memorandum of Points and Authorities in Support of Trustee Defendants' Motion to Dismiss, which is incorporated by reference herein.

Respectfully submitted,

/s/ Drew M. Hicks
Patrick F. Fischer (0039671)
Drew M. Hicks (0076481)
Keating, Muething & Klekamp, PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6459
Fax: (513) 579-6457
pfischer@kmklaw.com
dhicks@kmklaw.com
*Attorneys for Defendants,*
*Fifth Third Bancorp and*
*Fifth Third Asset Management, Inc.*

- 1 -

## MEMORANDUM IN SUPPORT

## INTRODUCTION

Plaintiff filed this Complaint on January 15, 2005, naming as Defendants, David J. Durham, J. Joseph Hale, Jr., David J. Gruber, Edward Burke Carey (the "Defendant Trustees"), Fifth Third Bancorp, Fifth Third Asset Management, Inc. (the "Fifth Third Defendants"), and John Does No. 1 through 100 (all of the Defendants are sometimes collectively referred to as the "Defendants"). The lawsuit is a purported class action brought on behalf of investors in open-ended mutual funds with equity security holdings in the Fifth Third Family of Funds (the "Fifth Third Funds" or the "Funds"), against the Defendant Trustees, the Fifth Third Defendants, and other affiliates of the Funds. In the Complaint, Plaintiff alleges that all of the Defendants breached fiduciary duties and duties of care owed to Plaintiff, including duties arising under Sections 36(a), 36(b), and 47(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a *et seq.*, for failing to ensure that the Fifth Third Funds participated in securities class action settlements for which the Funds were allegedly eligible.

As discussed more fully below, the Fifth Third Defendants are entitled to a dismissal of Plaintiff's claims against them as a matter of law because: (1) Plaintiff lacks standing to sue on behalf of mutual funds in which he owns no shares; (2) Plaintiff brought a derivative action but failed to meet the requirements of Rule 23.1 of the Federal Rules of Civil Procedure; and (3) Plaintiff's claims allegedly brought pursuant to the ICA are substantively defective.

## STATEMENT OF FACTS[1]

Plaintiff brought this lawsuit against all of the Defendants, on behalf of himself and all others similarly situated, for compensatory and punitive damages, forfeiture of all commissions

---

[1] Because this is a Motion to Dismiss, all the factual allegations in Plaintiffs' Complaint must be taken as true. *See Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

and fees paid by class members, costs, and attorneys' fees. Plaintiff seeks certification of this action as a class action on behalf of all persons owning one of the Fifth Third Funds at any time between January 10, 2001 through January 10, 2005, and who were damaged by the Defendants' alleged conduct (the "Class Period"). (Complaint at ¶16).

The alleged basis of Plaintiff's lawsuit is that during the Class Period, the Fifth Third Funds were eligible to participate in the recovery of money resulting from hundreds of securities class action settlements, but the Defendants failed to submit proof of claim forms in such cases, thereby forfeiting Plaintiff's rightful share of the recovery obtained in the settlements. (*Id.* at ¶¶ 24, 26). According to Plaintiff, if the Defendants had submitted the proper proof of claim forms on behalf of the Fifth Third Funds in these class action settlements, the settlement monies would have increased the total assets of the Funds, and such increase would have been allocated to the then-current investors upon a recalculation of the Net Asset Value ("NAV") (*Id.* at ¶ 25).[2]

Based on the foregoing allegations, in Count I of his Complaint, Plaintiff claims that the Defendants owed fiduciary duties directly to Plaintiff and the purported class members, and that such duties were breached by the Defendants by failing to submit proof of claim forms or to participate in securities class action settlements. (*Id.* at ¶¶ 31, 32). As a result of the Defendants' purported breach of its fiduciary duties, Plaintiff claims that he and members of the class have been injured and suffered "substantial damages." (*Id.* at ¶ 33).

In Count II of the Complaint, Plaintiff alleges that the Defendants owed a duty of care directly to Plaintiff and the class members to act in a reasonable manner and to protect and

---

[2]    In the Complaint, Plaintiff defines Net Asset Value as the value of each investor's portion of pooled assets in a mutual fund, which is determined by taking the market value of all of the mutual fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities, and dividing the result by the number of mutual fund shares outstanding. (*See* Complaint at ¶ 3). According to Plaintiff's Complaint, Net Asset Value is computed daily so that any gain or loss in a mutual fund's assets is immediately allocated to the individual investors as of that specific date. (*Id.*).

maximize each individual's investment in the Fifth Third Funds.  (*Id.* at ¶ 36).  According to Plaintiff, by failing to submit the proof of claim forms, or to participate in the securities class action settlements, the Defendants breached this duty of care, and as a result, Plaintiff and members of the class "have been damaged by millions of dollars."  (*Id.*).

Finally, Plaintiff alleges violations of the ICA.  In Count III of the Complaint, Plaintiff alleges that under § 36(a) of the ICA, all of the Defendants are deemed to have a fiduciary duty to Plaintiff and members of the class, and that the Defendants breached their fiduciary duties arising under § 36(a) by failing to submit proof of claim forms in the referenced class action settlements.  (*Id.* at ¶¶ 38, 39).  In Count IV of the Complaint, Plaintiff alleges that the Fifth Third Defendants, under § 36(b) of the ICA, are deemed to have a fiduciary duty "with respect to the receipt of compensation for services, or of payments of a material nature, paid by the Fund and Fund investors," and that the Fifth Third Defendant breached this duty by failing to submit proof of claim forms in the class action settlements.  (*Id.* at ¶¶ 42, 43).  In Count V of the Complaint, Plaintiff alleges that all of the agreements between Fifth Third Defendants and the Fifth Third Funds were performed in violation of the ICA.  (*Id.* at ¶ 46).  Therefore, according to the Complaint, the agreements are unenforceable under § 47(b) of the ICA, and the Fifth Third Defendants "are liable to return to the Funds and Fund investors all of the fees and consideration of any kind" paid to them during the Class Period.  (*Id.* at ¶¶ 47, 48).

In one way or another, all of Plaintiff's claims are deficient and, therefore, must be dismissed by this Court.

## ARGUMENT

A complaint may be dismissed for failure to state a claim upon which relief can be granted where it appears that "the plaintiff can prove no set of facts in support of his claims that

would entitle him to relief." *Allard v. Weitzman (In re Delorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). When making this determination, the Court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Id.* In other words, a "Rule 12(b)(6) motion to dismiss requires a court to determine whether a cognizable claim has been pleaded in the complaint." *McEntee v. Henderson*, 154 F. Supp.2d 1286, 1288-89 (S.D. Ohio 2001).

A motion to dismiss under Rule 12(b)(6) "will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief." *Jackson v. City of Columbus*, 67 F. Supp.2d 839, 852 (S.D. Ohio 1998) (*citing Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)). Accordingly, "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable theory." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). In ruling on a motion to dismiss, a court is not required to accept or consider a plaintiff's summary allegations or unwarranted legal conclusions. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (holding that plaintiffs are required to "plead more than bare legal conclusions"); *Allard*, at 991 F.2d at 1240 (holding that plaintiffs are required to plead "more than the bare assertion of legal conclusions").

Based on this standard, there can be no question that Plaintiff's claims asserted against the Fifth Third Defendants must be dismissed because they fail to state a claim upon which relief can be granted.

## I. PLAINTIFF LACKS STANDING TO ASSERT CLAIMS RELATING TO FUNDS IN WHICH HE HOLDS NO INTEREST.

In the Complaint, Plaintiff alleges that the Defendants acted improperly when they "failed to ensure that the Funds participated in (or opted out of)" more than one hundred (100) securities class action settlements (Complaint, at ¶ 5). According to Plaintiff's Complaint, if the Defendants had submitted proof of claim forms on behalf of the Funds in these settlements, the settlement funds would have increased the total assets of Funds, and such increase would have been allocated immediately to the then-current investors upon recalculation of the NAV. (Id. at ¶ 25). Plaintiff alleges that the "Fifth Third Family of Funds" were eligible to participate in such settlements (although Plaintiff fails to identify the funds or the settlements that that they were eligible to participate in) (Id. at ¶¶ 1, 5). Notably, however, Plaintiff also alleges that he only "owned *one* of the Funds." (Id. at ¶ 10 (emphasis added)). This creates an insurmountable problem for Plaintiff – he lacks standing to litigate claims relating to the Fifth Third Funds in which he has no ownership interest.

The Supreme Court has made it abundantly clear that in order to satisfy the case or controversy requirement in Article III of the Constitution, a party invoking the court's authority must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990) (quoting *Valley Forge Christian College v. American United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). Courts have routinely dismissed actions for lack of standing when mutual fund shareholders assert causes of action on behalf of mutual funds in which they have not invested. *See, e.g., Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735-738 (3d Cir. 1970) (dismissing plaintiff's derivative claims against mutual funds in which he did not own shares); *Werfel v. Kramarsky*, 61 F.R.D. 674, 679 (S.D.N.Y. 1974)

("one who does not own shares in a corporation at the time a suit is filed is not qualified to bring a derivative action on its behalf"); *Herman v. Steadman*, 50 F.R.D. 488, 489-490 (S.D.N.Y. 1970) (rejecting shareholder's attempt to pursue ICA claims on behalf of three mutual funds because he owned an interest in only one of them); *Williams v. Bank One Corp.*, 2003 WL 22964376 (N.D. Ill. 2003) (rejecting shareholder's attempt to bring a derivative claim not only on behalf of mutual funds in which he owned shares, but also against all funds within One Group Family of Funds).

Like the plaintiffs in the above-cited cases, Plaintiff lacks standing to pursue claims relating to the Fifth Third Funds in which he did not own an interest. Accordingly, all claims relating to the Fifth Third Funds, other than one in which Plaintiff allegedly invested, must be dismissed, for this reason alone.

## II. EVEN PLAINTIFF'S CLAIMS BROUGHT IN RELATION TO FUNDS IN WHICH HE OWNED SHARES MUST BE DISMISSED BECAUSE HE HAS BROUGHT A SHAREHOLDER'S DERIVATIVE ACTION BUT FAILED TO COMPLY WITH RULE 23.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A. Plaintiff's Claims are Clearly Derivative.

In this action Plaintiff claims to be seeking to recover for an alleged injury to "the Fifth Third Family of Funds" due to the Defendants' alleged failure to participate in certain securities class action settlements. (Complaint at ¶ 5). Thus, Plaintiff is alleging harm to the Funds themselves. Such claims, by definition, are derivative because the rights that Plaintiff is seeking to vindicate are those of the Funds, not those of its individual shareholders.

A derivative suit "permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991). The question of whether a plaintiff's claims are direct or derivative is one of

state law.  *See Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996) (citing *Kamen*, 500 U.S. at 90).  The relevant state law is the law of the state in which the relevant business entity was organized.  *See Kamen*, 500 U.S. at 108-109 (stating that the law of the state of incorporation governs shareholder derivative actions); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 (N.D. Ill. 1999) (citing *Kaman*, the court held that state law "governs whether plaintiffs' claims are direct or derivative").  Accordingly, Massachusetts law governs in this case.[3]

Under Massachusetts law, a shareholder may not directly bring claims that belong to the corporation; such claims must be brought derivatively.  *Cigal v. Leader Development Corp.*, 557 N.E.2d 1119, 1123 (Mass. 1990).  To determine whether a claim belongs to the corporation, a court must inquire whether the shareholder's injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock.  *Jackson v. Stulhfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990).  In other words, an "action is derivative if the gravamen of the complaint is an injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual shareholders, or it seeks to recover assets for the corporation or to prevent the dissipation of assets."  *Farragut Mortgage Co., Inc. v. Aruthur Anderson, LLP*, 1999 WL 823656, *17 (Mass. Super. 1999).  Moreover, under Massachusetts law, a shareholder of a mutual fund does not attain a primary right to sue simply because that

---

[3]     Plaintiff failed to identify which of the Fifth Third Funds he owns shares in, or under which state's law that Fund is organized.  Because all of the Fifth Third Funds, however, are organized as components of Massachusetts business trusts, Massachusetts law applies.  Notably, if the Court were to address this issue under Ohio law, the analysis and conclusion would remain the same.  Ohio courts have held that "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third-party directed towards the corporation."  *Adair v. Wozniak*, 492 N.E.2d 426, 427 (Ohio 1986).  Where a shareholder has been injured because of harm caused to the corporation, the cause of action belongs to the corporation, not the shareholder.  *See id*. at 429 ("Where the defendant's wrongdoing has caused direct damage to corporate worth, the cause of action accrues to the corporation, not to the shareholders, even though in an economic sense real harm may well be sustained by the shareholders as a result of reducing earnings, diminution in value of ownership, or accumulation of personal debt and liabilities from the company's financial decline.").

value of his shares reflects the net asset value of the fund. *See Marcus v. Putnam*, 60 F.R.D. 441, 443 (D. Mass. 1973) (applying Massachusetts law, the court rejected the argument that a shareholder of a mutual fund has a right to sue as an individual). "Rather, it is the nature of the right sought to be enforced that determines the proper way to bring suit. If the right belongs to the corporation, a suit seeking to enforce that right must be brought derivatively." *Id.* at 443-444; *see also Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) ("if a plaintiff alleges mismanagement of funds…or breach of fiduciary duty resulting in the diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and thus derivative if brought by an investor").

It is clear that all of Plaintiff's claims are derivative, as they all are based on an alleged injury to "the Fifth Third Family of Funds," rather than individual shareholders. The gravamen of Plaintiff's Complaint is that the Defendants committed some sort of misconduct by not filing proof of claim forms that would have allowed "the Funds" to recover settlement proceeds. Plaintiff even concedes this point, alleging that if the Defendants had submitted the proof of claim forms, the settlement funds would have increased the total assets held by the Funds, thereby increasing the NAV. (Complaint at ¶25). Accordingly, under Massachusetts case law, the claims in this lawsuit are quite clearly derivative.

**B.**    **Plaintiff Failed to Comply With Rule 23.1 of the Federal Rules of Civil Procedure.[4]**

To pursue derivative claims, a plaintiff must comply with Rule 23.1 of the Federal Rules of Civil Procedure, which requires a plaintiff bringing such claims to either: (1) make a demand

---

[4]    Plaintiff's claim based on § 36(b) of the ICA cannot be dismissed for failing to comply with Rule 23.1 of the Federal Rules of Civil Procedure because that provision allows individual shareholders to directly assert claims, on behalf of mutual funds, if those claims relate to excessive advisory fees. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). All other claims brought by Plaintiff, however, are subject to dismissal for failure to comply with Rule 23.1.

on the directors of the entity on whose behalf the plaintiff wishes to proceed; or (2) plead with particularity the reasons why demand should be excused under applicable state law. FED. R. CIV. P. 23.1. Plaintiff has not alleged that he made a demand on the Fifth Third Funds' directors, or pled why such demand should be excused. Therefore, Plaintiff has failed to comply with Federal Rule of Civil Procedure 23.1.

In *Kamen*, the U.S. Supreme Court recognized that "although Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not *create* a demand requirement of any particular dimension." 500 U.S. at 96 (emphasis in original). Thus, in order to determine how strict the demand requirement is, and whether that requirement may be excused, courts must look to the law of the relevant state. *Id.* at 108; *see also Davis v. DCB Financial Corp.*, 259 F. Supp.2d 664, 669 (S.D. Ohio 2003) ("Whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation."). "The law of the state of incorporation controls even when the derivative claims are brought under federal law." *Id.* Because the Fifth Third Funds were established as Massachusetts trusts, Massachusetts law applies.

Under Massachusetts law, shareholders are required to make a demand in *every* derivative case:

> No shareholder may commence an derivative proceeding until:
>
> (1) a written demand has been made upon the corporation to take suitable action; and
>
> (2) 90 days have elapsed from the date the demand was made, or if the decision whether to reject such demand had been duly submitted to a vote of the shareholders…within 60 days from the date when demand was made, 120 days have elapsed from the date the demand was made, unless in either case the shareholder has earlier been notified that the demand has been rejected by the corporation or irreparable injury to the corporation would result by waiting for the expiration of such 90-day or 120-day period.

MASS. GEN. LAWS ANN. ch. 156D, § 7.42 (West 2003). *See also Demoulas v. Demoulas Super Markets, Inc*., 2004 WL 1895052, *1, n. 3 (Mass. Super. 2004) (holding that pursuant to § 7.42 of the Massachusetts Business Corporation Act, "a demand must be made prior to the commencement of every derivative case").[5]   Plaintiff fails to make any allegation regarding whether he made a demand upon the Defendant Directors of the Fifth Third Funds, or why such a demand should be excused.  As such, Plaintiff's claims must be dismissed with prejudice.[6]

### III.   EVEN IF PLAINTIFF HAD STANDING TO BRING THIS LAWSUIT, HIS CLAIMS BASED ON § 36(a), § 36(b), AND § 47(b) OF THE ICA MUST BE DISMISSED BECAUSE THESE CLAIMS ARE SUBSTANTIVELY DEFECTIVE.

#### A.   There Is No Private Right of Action Under § 36(a) of the ICA.

There is no private right of action for Plaintiff to pursue under Section 36(a) of the ICA. Section 36(a) authorizes "the Commission" (*i.e.* the SEC) "to bring an action" for "breach of fiduciary duty" with respect to investment companies.  15 U.S.C. § 80a-35(a).  Section 36(a) does not provide for any causes of action to be brought by private civil litigants.  *Id.*  As such, in

---

[5]      Although the Massachusetts Business Corporation Act is a statute dealing with corporations, courts have regularly held that the demand rules governing corporations apply with equal force to entities organized as Massachusetts business trust.  *See*, *e.g*., *Green v. Nuveen Advisory Corp*., 186 F.R.D 486, 488, n. 2 (N.D. Ill. 1999) ("Courts applying Massachusetts law to shareholder suits against business trust have uniformly required the shareholder to follow Massachusetts law regarding derivative suits"); *Clairdale Enterprises, Inc. v. C.I. Realty Investors*, 423 F. Supp. 257, 260-261 (S.D.N.Y. 1976) (applying demand requirement to derivative suits involving Massachusetts business trust); *Jones v. Equitable Life Assurance Society of the U.S*., 409 F. Supp. 370, 374 (S.D.N.Y. 1975) (same).

[6]      The result would be the same even if analyzed under Ohio law.  In Ohio, the only exception to the demand requirement is that the shareholder must prove that "the directors minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed."  *Drage v. Procter & Gamble*, 119 Ohio App.3d 19, 25 (1997).  Consequently, a shareholder has no independent right to bring suit on the corporation's behalf unless he demands that the board of directors files the suit, and the board refuses to do so, and that refusal is wrongful, fraudulent or arbitrary, or is the result of bad faith or bias on the part of the directors.  *Drage*, 119 Ohio App.3d at 24; *Carlson v. Rabkin*, 152 Ohio App.3d 672, 680 (2003). *See also Abrahamson v. Waddell*, 63 Ohio Misc.2d 270, 272 (1992) ("Where a plaintiff does not make a demand on the corporation's directors, he or she must state with particularity why such a demand would have been futile"); *Davis v. DCB Financial Corp*., 259 F.Supp.2d 664, 669-70 (S.D. Ohio 2003); *Carlson*, 152 Ohio App.3d at 680-81.
        Plaintiff did not make demand on the Fund's board of directors.  Accordingly, under Ohio law the plaintiff may not sue derivatively on behalf of the Fund unless he alleged with particularity, that demand would be futile. Plaintiff has not even alleged demand futility and has failed to comply with the requirements of F.R.C.P. 23.1. Accordingly, Plaintiff's complaint should be dismissed.  *See Owen v. Modern Diversified Indus.*, 643 F.2d 441, 444 (6th Cir. 1981) (affirming dismissal of complaint for failure to comply with Rule 23.1).

order for Plaintiff to have an actionable claim under Section 36(a) of the ICA, this Court must find that an implied private right of action exists under Section 36(a).  Recent Supreme Court and Court of Appeals decisions, however, preclude such a finding.

### 1.    *Alexander v. Sandoval and Olmsted v. Pruco Life Ins. Co. of New Jersey*

In *Alexander v. Sandoval*, the Supreme Court definitively held that courts must look to the intent of Congress in determining whether a federal private right of action exists for violations of a federal statute.  532 U.S. 275, 286 (2001).  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  *Id.*  The *Sandoval* court explained:

> The judicial task is to interpret the statute Congress passed to determine whether it displays an intent to create not just a private right but also a private remedy…. Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Id.* at 286-287.  *See also Gonzaga University v. Doe*, 536 U.S. 273, 283-286 (2002) (holding that there can be no private right of action in absence of clear and convincing congressional intent evidenced in the text and structure of the statute).

Applying the principles that the Supreme Court articulated in *Sandoval*, the Second Circuit held that no private right of action existed under Sections 26(f) and 27(i) of the ICA.  *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 436 (2d Cir. 2002).  Adhering to the Supreme Court's directive that a congressional intent to create a private right of action is "determinative," the Second Circuit stated that "[a] court must 'begin [its] search for Congress's intent with the text and structure' of the statute."  *Id.* at 432 (quoting *Sandoval*, 532 U.S. at 288).  Because "[n]o provision of the ICA explicitly provides for a private right of action for violations

of either § 26(f) of § 27(i)" the Second Circuit concluded that "we must presume that Congress did not intend one." *Olmstead*, 283 F.3d at 432.

The Second Circuit found this presumption further strengthened by three additional features of the ICA. First, §§ 26(f) and 27(i) did not contain any "rights-creating language." *See id.* at 433 (citing *Sandoval*, the court stated that the language did not mention investors, but only regulation of insurance companies and "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons"). Second, § 42 of the ICA, explicitly provides for enforcement of all ICA provisions, including §§ 26(f) and 27(i), by the SEC, through investigations and civil suits for injunctions and penalties. *See Olmstead*, 283 F.3d at 433 ("[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others"). Third, Congress explicitly provided for a private right of action for investors in regulated investment companies in § 36(b) of the ICA. "Congress's explicit provision of a private right of action for investors to enforce one section of a statute suggests that omission of an explicit right to enforce other sections was intentional." *Olmsted*, 283 F.3d at 433; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 472 (1979) ("obviously…when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly").

The Second Circuit, therefore, concluded that the ICA's text created a "strong presumption" that Congress did not intend to create private rights of action for violations of §§ 26(f) and 27(i), and that the "heavy burden" of rebutting that presumption is "on the plaintiffs to demonstrate otherwise." *Olmsted*, 283 F.3d at 433. The Second Circuit further concluded that this "strong presumption" could not be overcome by relying on prior case law which found implied private rights of action under other provisions of the ICA. According to the *Olmsted*

court, such decisions no longer had force in light of *Sandoval*. "Past decisions reflecting judicial willingness to make effective [statutory] purpose in the context of implied rights of action belong to an *ancient regime. Olmsted*, 283 F.3d at 434.[7]

### 2. *Chamberlain v. Aberdeen Asset Management Ltd.*

Relying specifically on *Sandoval* and *Olmsted*, the Eastern District New York, in a case directly on point, recently held that "when *Olmsted* and *Sandoval* are applied to ICA § 36(a), it is evident that the provision does not give rise to a private right of action." *Chamberlain v. Aberdeen Asset Management Ltd.*, 2005 WL 195520, *4 (E.D.N.Y. Jan. 21, 2005). In coming to this conclusion the Eastern District of New York considered the four factors that were laid out in *Olmsted*. First, the court looked at whether § 36(a) explicitly provided for a private right of action. *Id.* at *2. Because § 36(a) does not in fact explicitly provide for a private right of action, the court stated that it "must presume that Congress did not intend to create one." *Id.* at *2.

Second, the court looked to whether § 36(a) contained any "rights-creating" language for persons who are protected under the statute, or instead focused on the person regulated. *Id.* at *3. The court found that § 36(a) was "devoted primarily describing the actions that are prohibited" and mentions investors only to say that, in awarding relief after the SEC has alleged and proven a breach of fiduciary duty, a court should give "due regard" to the protection of investors. *Id.*

Third, the court considered whether ICA provided for alternative methods of enforcement because "[t]he express provision of one method of enforcing a substantive rule suggests that

---

[7] The *Olmsted* court also did not give any material weight to the 1980 legislative history arising out of amendments to provisions of the ICA. At that time a House Committee Report state that implied causes of action, including implied actions under § 36(a), should continue. H.R. Rep. No. 96-1341 (1980), reprinted in 1980 U.S.C.C.A.N. 4800, 4810-11. The *Olmsted* court held that such an after-the-fact report by one congressional committee could not overcome the strong presumption arising from the clear language of a statute written forty years earlier by a different Congress.

Congress intended to preclude others." *Id.* (quoting *Sandoval*). Noting that § 42 of the ICA "explicitly provides for enforcement of all ICA provisions" and that § 36(a) "likewise begins by granting the [SEC] the authority to bring an action alleging violation of fiduciary duties," the court held that Congress could not have intended to create an implied private right of action. *Chamberlain*, 2005 WL 195520, at *3.

Fourth, the *Chamberlain* court considered whether Congress provided a private right of action for enforcement of any other provisions of the ICA because "Congress's explicit provision of a private right of action to enforce one section of the statute suggests that omission of an explicit private right to enforce other sections was intentional." *Id.* The court pointed out that § 36(b) of the ICA explicitly creates a private right of action by a shareholder against an adviser for breach of the duty not to charge excessive fees. *Id.* "The implication, therefore, is that if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." *Id.*

The *Chamberlain* court concluded that "these [four] factors give rise to a presumption that Congress did not intend to create a private right of action for enforcement of ICA § 36(a)." In reaching that result, the *Chamberlain* court, like the court in *Olmsted*, found that the prior decisions finding an implied private right of action under § 36(a) were premised on faulty, outdated reasoning and that the asserted indications of congressional intent to create an implied private right of action under § 36(a) were likewise unpersuasive. *See id.* at **3-4 (stating that legislative history available in this instance is insufficient to overcome unambiguous language of § 36(a) and cases finding an implied private right of action under § 36(a) are part of the "*ancient regime*" that was overruled in *Sandoval* and *Olmsted*). Thus, the court dismissed the plaintiffs'

claims under § 36(a) with prejudice and declined to proceed further with the state law claims for which the plaintiffs alleged supplemental (pendent) jurisdiction.  *Id.* at *4.

### 3. Under *Sandoval*, *Olmsted*, and *Chamberlain*, Plaintiff's Claim Under § 36(a) Must Be Dismissed.

Based on *Sandoval*, *Olmsted*, and *Chamberlain*, Count I of Plaintiff's Complaint must be dismissed.  In short, § 36(a) is, "[a] statutory provision that does not use right-creating language, in a statute that provides for other remedies and contains explicit private rights of action to enforce other sections, [and] creates no ambiguity on the question of an implied private right of action that legal context might clarify."  *Olmsted*, 283 F.3d at 435.  Accordingly, there is no implied private right of action under § 36(a) and Plaintiff's claims pursuant to this section must be dismissed.

### B. Plaintiff Has Failed to Assert a Viable Claim Under § 36(b).

In Count IV of his Complaint, Plaintiff attempts to assert a violation of § 36(b) of the ICA.  This section imposes a fiduciary duty on mutual fund advisers to refrain from charging or accepting excessive fees for services provided to funds and paid for by fund assets.  15 U.S.C. §80a-35(b); *see also Midgal v. Rowe-Fleming International Incorporated*, 248 F.3d 321, 329 (4th Cir. 2001) ("Section 36(b) is sharply focused on the question of whether the fees themselves are excessive").  Section § 36(b) does not impose a general fiduciary duty upon directors and investment advisers of a fund.  *See id.* at 328-329 ("Section 36(a) imposes a general fiduciary duty upon both directors and investment advisers of a fund.  Section 36(b) was not enacted to provide a cause of action separate from Section 36(a) to govern…the investment adviser's general performance.").  Rather, "*Section 36(b) is limited to cases where there was excessive compensation*."  *Id.* at 329 (emphasis added); *see also Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 744, n. 9 (7th Cir. 2002) ("fund mismanagement issues are within the purview of §

36(a), not § 36(b)"); *In re Nuveen Fund Litigation*, 1996 WL 328006, *12 (N.D. Ill. 1996) (§ 36(b) "indicates a standard of care that only runs to the terms and receipt of compensation and not one that broadly governs an investment adviser's performance"); *Green v. Fund Asset Management, L.P.*, 147 F. Supp.2d 318, 330 (D. N.J. 2001) ("section 36(b) is for recovery of excessive advisory fees."); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928 (2d Cir. 1982) ("[t]o be guilty of a violation of Section 36(b)…the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered").  Thus, if a plaintiff seeks to bring a claim for general breach of fiduciary duty, it cannot be brought under § 36(b), "it must be done under some other section of the ICA, or alternatively under state law."  *Midgal*, 248 F.3d at 329.

Section 36(b) of the ICA does not apply to the "misconduct" Plaintiff alleges in this case. Plaintiff focuses exclusively on an alleged breach of general fiduciary duties – purported mismanagement of the Funds by failing to submit proof of claim forms in securities class action settlements.  Plaintiff has alleged no facts to suggest that the Fifth Third Defendants' fees were excessive or even if the Fifth Third Defendants received any compensation.  Indeed, the term "excessive fees" or "excessive compensation" is never even used in Count IV of the Complaint. Plaintiff does attempt to use language from the statute to allege that the Fifth Third Defendants are deemed to have a fiduciary duty "with respect to the receipt of compensation for services." (Complaint at ¶ 42).  Such an attempt to shoehorn a general breach of fiduciary duty claim within the scope of § 36(b), however, is unavailing because "Rule 12(b)(6) requires more than the mere recitation of boilerplate statutory language."  *Midgal*, 248 F.3d at 328 (affirming district court's decision to grant motion to dismiss because plaintiff failed to allege that fund advisers received excessive compensation).

Moreover, it important to note that Plaintiff did not allege a connection between the challenged conduct and excessive advisory fees because to do so would be completely contradictory.  If the Fifth Third Defendants were to participate in the securities class action settlements, as Plaintiff suggests they have a duty to do, such participation would result in increased fund assets and, thus, result in **higher** advisory fees.  No doubt aware of such a contradiction, Plaintiff tried to vaguely assert a general breach of fiduciary duty claim and briefly mention the phrase "with respect to compensation."  Such pleading does not save Plaintiff's claim.  *See id.* ("General breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b).").  Accordingly, because Plaintiff does not, and cannot plead a violation of § 36(b) of the ICA, this Court must dismiss his claims pursuant to that provision.[8]

### C.      Section 47(b) Is a Remedy Provision and Does Not Create a Separate Cause of Action.

In Count V of his Complaint, Plaintiff alleges that "[f]or the reasons alleged herein," the agreements between the Fifth Third Defendants and the Funds were performed, "on information and belief," in violation of the ICA, and pursuant to § 47(b) of the ICA, are therefore unenforceable.  (Complaint, at ¶¶ 46, 47).  Plaintiff further states that pursuant to § 47(b) of the ICA, the Fifth Third Defendants are liable to return to the Funds and investors, all of the fees and consideration of any kind paid to them during the time period that the violations occurred.  (*Id.* at

---

[8]      Even if Plaintiff's § 36(b) claim survives this Motion to Dismiss, his damages are limited to actual damages incurred during the one-year period prior to the filing date of this Complaint.  *See* 15 U.S.C. § 80a -35(b)(3) ("No award for damages shall be recoverable for any period prior to one year before the action was instituted.  Any award of damages against any such recipient shall be limited to the actual damages…and shall in no event exceed the amount of compensation or payments received."); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 743 (7th Cir. 2002) ("damages are recoverable only for the one-year period before the filing of the action"); *Kahn v. Kohlberg, Kravis, Robert & Co.*, 970 F.2d 1030, 1037-1038 ("the plaintiff may collect only those damages that have occurred in the prior year").  Accordingly, if Plaintiff is entitled to any recovery under § 36(b), damages are limited to the one-year period before this lawsuit was filed.

¶ 48).  Plaintiff clearly has a misunderstanding of § 47(b) because it is simply a remedy provision which makes contracts that were made, or performed, in violation of the other provision of the ICA, voidable.  In short, § 47(b) does not provide a separate cause of action.

Section 47(b) of the ICA provides, in pertinent part:

> A contract that is made, or whose performance involves, ***a violation of this subchapter, or of any rule, regulation, or order thereunder***, is unenforceable by either party (or by a nonparty to the contract who acquired a right under the contract with knowledge of the facts by reason of which the making or performance violated or would violate any provision of this subchapter or any rule, regulation, or order thereunder) unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of this subchapter.

15 U.S.C. § 80a-46(b)(1) (emphasis added).  Thus, as the plain language of the statute makes clear, a contract is unenforceable under § 47(b) only if it was made, or performed in violation of another provision of the ICA.  *See Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 438 (D. Conn. 1983) ("A plaintiff can seek relief under Section 47 [of the ICA] only by showing a violation of some other section of the Act."); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 916 F. Supp. 1343, 1349 (D. N.J. 1996) (under § 47(b) "a plaintiff can seek relief, either rescission or damages," only "by showing a violation of some other section of the Investment Company Act").

As discussed more fully above, Plaintiff has failed to state a viable claim under §§ 36(a) and 36(b) of the ICA.  *See* discussion, *supra*, Parts III.A and III.B.  Thus, there is no violation of the ICA upon which to base the rescission of the contracts pursuant to § 47(b) and Count V of Plaintiff's Complaint must be dismissed.

## IV.    PLAINTIFF'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Notwithstanding the reasons for dismissal discussed above, Plaintiff's common law

claims of breach of fiduciary duty (Count I) and negligence (Count II) must be dismissed for failing to state a claim upon which relief can be granted.

It is clear that under Massachusetts law directors and trustees only owe common law management duties to the corporations or trusts, not to individual shareholders.  *See*, *e.g.*, *Jernberg. v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004) (applying Massachusetts law, the court stated that "while directors and officers of a commercial corporation stand in a relation of trust to the corporation and are bound to exercise the strictest good faith in respect to its property and business, they do not occupy a similar trust relationship toward individual stockholders in the corporation"); *Adelson v. Adelson*, 806 N.E.2d 108, 120 (Mass. App. Ct. 2004) (as "a general rule…in the absence of special circumstances, directors have no special duty to individual shareholders").  Thus, the Fifth Third Defendants, as mutual fund investment advisors, cannot owe a greater duty to individual shareholders than do the Defendant Trustees.  Indeed, an investment advisor owes its duties to the mutual funds with which it has entered into an investment advisory contract; those duties do not extend to individual mutual fund shareholders. *See Marcus*, 60 F.R.D. at 444 (applying Massachusetts law, the court held that because claims arose out of the contract and duty existing between open-end mutual fund and adviser, the right to sue for breach of that duty was with the mutual funds, not the individual investors).  As such, Plaintiff's common law claims must be dismissed because the Fifth Third Defendants do not directly owe the Funds' shareholders any duties.

## V.  PLAINTIFF HAS NOT SUFFICIENTLY PLED THAT FIFTH THIRD BANCORP IS LIABLE AS THE PARENT COMPANY OF FIFTH ASSET MANAGEMENT, INC.

In his Complaint, Plaintiff fails to include any allegations establishing the liability of Fifth Third Bancorp as the parent company of Fifth Third Asset Management, Inc.  Under both

the ICA, and common law, a controlling person may sometimes be liable for breaches of duty committed by a controlled person. Here, however, the Complaint says nothing about Fifth Third Bancorp, other than identifying it as "the ultimate parent of Fifth Third Asset Management, Inc." (Complaint at ¶ 11). The rest of the Complaint refers exclusively to actions by Fifth Third Asset Management, Inc., or simply lumps all of the Defendants together. Unless Plaintiff can offer facts demonstrating that the Fifth Third Bancorp actively participated in the challenged conduct, or somehow controlled the activities of Fifth Third Asset Management, Inc., there is absolutely no basis for any claim against Fifth Third Bancorp.

## CONCLUSION

For all of the foregoing reasons, the Fifth Third Defendants respectfully request that this Court issue an Order dismissing all the claims that have been asserted against them.

Respectfully submitted,


/s/ Drew M. Hicks
Patrick F. Fischer (0039671)
Drew M. Hicks (0076481)
Keating, Muething & Klekamp, PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6459
Fax: (513) 579-6457
pfischer@kmklaw.com
dhicks@kmklaw.com
*Attorneys for Defendants,*
*Fifth Third Bancorp and*
*Fifth Third Asset Management*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION TO DISMISS OF DEFENDANTS FIFTH THIRD BANCORP AND FIFTH THIRD ASSET MANAGEMENT was served upon counsel of record via the Court's ECF/CM system this 30th day of March, 2005.

/s/ Drew M. Hicks
Drew M. Hicks

1419934.1