# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| JOHN HAYES, | Case No. 1:05CV028 |
| Plaintiff, | |
| v. | Judge Watson |
| | Magistrate Judge Black |
| DAVID J. DURHAM, et al., | |
| Defendants. | |

## MOTION TO DISMISS BY DEFENDANTS DAVID J. DURHAM, J. JOSEPH HALE, JOHN E. JAMONT, DAVID J. GRUBER, AND EDWARD BURKE CAREY

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey hereby move to dismiss the Complaint asserted against them in this matter.

In support of this Motion, these defendants rely on the accompanying Memorandum of Points and Authorities, Declaration of Thomas B. Smith, and Exhibits attached thereto. The referenced exhibits consist of two documents filed by law with the United States Securities and Exchange Commission and the Secretary of State of the Commonwealth of Massachusetts, and may be considered by the Court in resolving this motion without converting it to a motion under Rule 56 of the Federal Rules of Civil Procedure. *See, e.g., New England Health Care Empl. Pens. Fund v. Ernst & Young, LLP,* 336 F. 3d 495, 501 (6th Cir. 2003); *Bovee v. Coopers & Lybrand C.P.A.,* 272 F. 3d 356, 360-361 (6th Cir. 2001).

For all the foregoing reasons, and those set forth in the accompanying documents, the Complaint in this matter should be dismissed with prejudice as to Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey.

Respectfully submitted,


  /s/ Thomas B. Smith               
Todd H. Bailey (0002407)
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202
Tel. (513) 455-7637
Fax  (513) 762-7937

-and-

Thomas B. Smith
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC  20005
Tel. (202) 508-4600
Fax (202) 508-4650

*Counsel for Defendants David J. Durham,*
*J. Joseph Hale, Jr., John E. Jaymont, David J.*
*Gruber, and Edward Burke Carey*


Dated:  March 30, 2005

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 30, 2005, the Motion to Dismiss by Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey, with attached Memorandum of Points and Authorities in Support, Declaration of Thomas B. Smith, and Exhibits thereto, was served electronically, through the Court's ECF System, upon the following counsel for the plaintiff in this matter:

David P. Meyer (0065202)
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Randall K. Pulliam
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

                                                 ____/s/ Thomas B. Smith _____
                                                 Thomas B. Smith

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| JOHN HAYES,<br><br>     Plaintiff,<br><br>  v.<br><br>DAVID J. DURHAM, et al.,<br><br>     Defendants. | Case No. 1:05CV028<br><br><br>Judge Watson<br>Magistrate Judge Black |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF TRUSTEE DEFENDANTS' MOTION TO DISMISS

Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey hereby submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the Complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(6).

## Introduction

In this case an individual purporting to sue on "behalf of investors in open-ended mutual funds with equity securities holdings in the Fifth Third Family of Funds," Compl. ¶ 1, asserts claims against the Trustees and the Investment Adviser of the Fifth Third Funds (the "Funds"), and against the Investment Advisor's corporate parent, for failing to "ensure that the Funds participated in securities class settlements for which the Funds were eligible." *Id.* Plaintiff claims this alleged failure breached certain duties owed to him under federal Investment Company Act of 1940 (the "ICA") and state common law, and entitles him to compensatory damages, disgorgement of advisory fees, and punitive damages. *Id.*

According to the Complaint, during the 1990s a large number of class actions were filed against publicly traded companies, many of which were settled. Compl. ¶ 4. Parties owning

shares in these companies could, if eligible under the terms of the settlement agreements, participate in the distribution of any money paid pursuant to those agreements by completing "a short form called a Proof of Claim and submit[ting] it to [a] Claims Administrator."  *Id.*

The Complaint lists 136 class action cases which it says were settled since 2001, "many if not all" of which the "Funds were eligible to participate in . . . . by virtue of Funds owning the securities against which the suits were brought."  Compl. ¶¶ 5, 24.  Yet, according to the Complaint, "[d]efendants failed to ensure that the Funds participated in (or opted out) of many of these class action settlements."  *Id.*  As a result, it claims, "monies contained in dozens of Settlement Funds, which rightfully belonged to the Funds' investors, have gone unclaimed."  *Id.*[1]

According to the Complaint, the value of each share of a Fifth Third mutual fund "is determined by taking the market value of all of the fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities, and dividing the result by the number of shares outstanding."  Compl. ¶ 3.  The Complaint asserts that this net asset value ("NAV") per share "is computed daily so that any gain or loss in fund assets is immediately allocated to the individual investors as of that specific date."  *Id.*  Thus, according to the Complaint, if the alleged settlement proceeds had been added to these assets, the value of plaintiff's shares would have increased immediately.  *Id.* ¶ 25.

Plaintiff asserts three claims against defendants Durham, Hale, Jaymont, Gruber and Carey, all of whom serve on the Funds' Board of Trustees (the "Trustee Defendants").  Compl.

---

[1]    These allegations are strongly disputed.  Consistent with federal practice, they will be accepted for purposes of this motion, but the Complaint itself makes clear that plaintiff has no factual basis for them, admitting that they are made "upon information and belief" only.  Compl. ¶ 5.  Indeed, plaintiffs' counsel has  filed virtually identical Complaints -- making the exact same factual allegations -- against managers and directors of at least 40 other mutual funds in other federal courts around the country.  *See, e.g., Beugli v. Donahue,* 2:05cv00114-JP (E.D. Pa.); *Davidson v. Calvert,* 1:05cv200289-KMW (S.D.N.Y.); *Davis v. Bailey,* 1:05cv00042-MSK (D. Colo.); *Dull v. Arch,* 1:05cv00140 (N.D. Ill.); *Jacobs v. Bremner,* 1:05cv00143 (N.D. Ill.); *Hogan v. Baker,* 3:05cv00073 (N.D. Tex.); *Lefler v. Hacker,* 1:05-cv-10065-PBS (D. Mass.); *McMunn v. Peterson,* 3:05cv00295-NRB (S.D.N.Y.).

¶ 12.[2]  In Counts I and II, plaintiff claims that, by failing to ensure that the Funds participated in these settlements, the Trustee Defendants breached common law fiduciary duties and duties of care owed to plaintiff and members of the putative class.  *Id.* ¶¶ 30-36.  In Count III, plaintiff claims this supposed failure breached fiduciary duties imposed by Section 36(a) of the Investment Company Act of 1940 ("ICA").  *Id.* ¶¶ 37-40.

These same claims are asserted against the Funds' investment advisor, Fifth Third Asset Management, Inc., and the investment advisor's corporate parent, Fifth Third Bancorp (together, the "Fifth Third Defendants"), as well as John Doe Nos. 1 through 100.  Compl. ¶¶ 11, 13, 31, 36, 38.  In addition, in Count IV, plaintiff claims the Fifth Third Defendants breached fiduciary duties imposed by Section 36(b) of the ICA, and in Count V he claims these two defendants violated section 47(b) of the same statute.  *Id.* ¶¶ 41-48.

## <u>ARGUMENT</u>

Dismissal is warranted at the outset of an action where a plaintiff has not stated any claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing the claims in a complaint, a court must take all well-pleaded facts as true, but it need not credit legal conclusions or unwarranted factual inferences.  *See Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 897 (6th Cir. 2004); *In re Ford Motor Co. Secs. Litig.,* 381 F.3d 563, 567 (6th Cir. 2004).

## I.  <u>Plaintiff May Not Assert The Claims In The Complaint Through A Class Action</u>

Assuming plaintiff's claims had merit, they could only be asserted through a shareholder derivative suit.  Plaintiff has no standing to bring this case in the form of a class action because he seeks to vindicate rights the Funds themselves possess, because it alleges harm to the Funds in the first instance and to plaintiff only indirectly, and because plaintiff's alleged injury is no

---

[2]  The Complaint refers to these individuals as "Directors" of the Funds, but, as discussed below, the Funds are organized as a Massachusetts business trust, which is overseen by a board of trustees.  *See infra,* 5 & n.3.

different than what all other shareholders would allegedly have suffered. Because plaintiff did not plead this case derivatively -- or make demand on the Funds' board before filing suit, or comply with Rule 23.1 of the Federal Rules of Civil Procedure -- the case must be dismissed in its entirety.

### A.  Plaintiff's Claims Are Derivative In Nature

It is a well established principle of corporate law that "a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." *Gaff v. FDIC,* 814 F.2d 311, 315 (6th Cir. 1987). *See also Scharmer v. Carrollton Mfg. Co.,* 525 F.2d 95, 100 (6th Cir. 1975) ("Under Ohio law shareholders have no individual right of action for damage to the corporation."). "[D]irectors, rather than shareholders, manage the business and affairs of the corporation," *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. 1984), so they should decide whether to bring suit to rectify such an injury. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 530 (1984); *Spiegel v. Buntrock,* 571 A.2d 767, 773 (Del. 1990). If, following demand, directors fail to act, a shareholder may then bring suit, but such a suit must be brought derivatively, on behalf of the corporation. *Daily Income Fund,* 464 U.S. at 530 n.5; *Gaff,* 814 F.2d at 315; *Aronson,* 473 A.2d at 811.

There is an exception to this rule, where a shareholder "suffers an injury separate and distinct from that suffered by other shareholders, or the corporation as an entity." *Gaff,* 814 F.2d at 315 (citations and quotations omitted). However, "depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized . . . as the type of direct, personal injury which is necessary to sustain a direct cause of action." *Id.* In fact, the Sixth Circuit has "conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of

corporate shares." *Id.* at 317. This rule "applie[s] with equal force to claims of violations of the federal securities laws." *Id.* at 318.

Whether a mutual fund shareholder's claims are properly brought through either direct or derivative action is ultimately determined by reference to the law of the state of incorporation of the investment company. *Lapidus v. Hecht,* 232 F.3d 679, 683 (9th Cir. 2000); *Boland v. Engle,* 113 F.3d 706, 715 (7th Cir. 1997); *see also Kamen v. Kemper Fin. Services, Inc.,* 500 U.S. 90, 95 (1991) (look to law of state where investment company established to determine whether suit could proceed in absence of demand). Because Fifth Third Funds is organized as a Massachusetts business trust, the law of Massachusetts controls. *See Green v. Nuveen Advisory Corp.,* 186 F.R.D. 486, 489 & n.2 (N.D. Ill. 1999), *aff'd,* 295 F.3d 738 (7th Cir.), *cert. denied,* 537 U.S. 1088 (2002).[3]

Under Massachusetts law, a shareholder may not "directly bring claims that belong to the corporation." *Green,* 186 F.R.D. at 489 (citing *Bessette v. Bessette,* 434 N.E.2d 206, 208 (Mass. 1982)); *see also Blasberg v. Oxbow Power Corp.,* 934 F. Supp. 21, 26 (D. Mass. 1996). Where injury is indirect, in the form of a reduction in share value, and no different than what any other shareholder might claim, "the only remedy that might be available (other than a direct action by the corporation) [is] a stockholder's derivative suit." *Pagounis v. Pendleton,* 753 N.E.2d 808, 812 (Mass. App. Ct. 2001). *See also Cigal v. Leader Dev. Corp.,* 557 N.E.2d 1119, 1123 (Mass. 1990) (breach of fiduciary duty claims against corporate directors seek recovery of funds owed

---

[3]     *See* Fifth Third Funds, Amended and Restated Declaration of Trust, at 1 & art. XII, § 6 (filed with Secretary of State of Commonwealth of Massachusetts, on Jan. 13, 2004), attached to Declaration of Thomas B. Smith, dated March 30, 2005 ("Smith Decl."), as Exhibit A; *see also* Fifth Third Funds, Registration Statement (filed with the U.S. Securities and Exchange Commission, effective Nov. 29, 2004), and available at http://www.sec.gov/Archives/edgar/data/840678/000089180404002644/file002.txt. These documents are matters of public record that may be considered by the Court when ruling on a motion to dismiss without converting it into a Rule 56 motion. *See, e.g., New England Health Care Empl. Pens. Fund v. Ernst & Young, LLP,* 336 F. 3d 495, 501 (6th Cir. 2003); *Bovee v. Coopers & Lybrand C.P.A.,* 272 F. 3d 356, 360-361 (6th Cir. 2001).

to corporation and are therefore derivative); *Municipal Light Co. v. Commonwealth,* 608 N.E.2d 743, 749 (Mass. App. Ct. 1993) ("[s]tockholders may not in their own names bring an action for damage to the corporation in which they hold stock; they may bring a derivative action in the name of the corporation"); *Jackson v. Stuhlfire,* 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990) (action must be brought derivatively if wrong affects shareholders "merely as they are the owners of the corporate stock"); *Farragut Mortg. Co. v. Arthur Andersen LLP,* 1999 WL 823656, at *17 (Mass. Super. Ct. 1999) ("[c]orporate mismanagement . . . resulting in lower stock prices cannot form the basis for an individual shareholder lawsuit against the wrongdoer"); *cf. Sarin v. Ochsner,* 721 N.E.2d 932, 934-35 (Mass. App. Ct. 2000) (direct claim where investor's injury "is separate and distinct from that suffered by other shareholders").

In this case, plaintiff's claims are textbook examples of claims that must be brought derivatively. Those claims seek redress for actions alleged to have harmed the Funds in the first instance, and to have injured plaintiff only indirectly, by reducing the value of his investment. As alleged in the Complaint, the Funds -- not shareholders -- owned the securities that are subject to the settlements. Compl. ¶ 24. The ownership of those securities made the Funds -- not shareholders -- eligible to participate in the settlements. *Id.* The forms used to obtain the settlement proceeds should have been submitted "on behalf of the Funds," *id.* ¶ 25, and any proceeds from such settlements should have been paid to the Funds. *Id.* Plaintiff -- like every other shareholder in his fund -- would have been affected only because the allegedly "forfeited" settlements would not have been included in the daily recalculation of NAV, and then "passed on" to investors in the form of higher share values. *Id.* ¶¶ 3, 25-26.

Accordingly, plaintiff's claims against the Trustee Defendants -- under both the ICA and state common law -- fail because they were brought directly in the form of a class action, instead

of derivatively on behalf of the Fifth Third Funds. *See Lapidus,* 232 F.3d at 683 (no direct action where "the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares"); *Kauffman,* 434 F.2d at 732-33 (same); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.,* 272 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2003) (claims that "Fund's net asset value declined . . . plainly show that plaintiff's alleged injury was derivative, by virtue of her ownership of shares in the Fund"); *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* 2000 WL 10211, *4 (S.D.N.Y Jan. 6, 2000) (same); *Green,* 186 F.R.D. at 489-90 (dismissing direct claim asserted under § 36(a) since "[d]iminution in value of the common stock . . . is an injury to the Funds, and any harm to the plaintiffs as common shareholders is derivative in nature."); *In re Nuveen Fund Litig.,* 855 F. Supp. 950, 954 (N.D. Ill. 1994) (dismissing direct claims under § 36(a) and common law because injury alleged, dilution of net asset value, is "not distinct from the alleged injuries to all the Nuveen funds' shareholders"); *Marcus v. Putnam,* 60 F.R.D. 441, 444 (D. Mass 1973) (fund shareholders have no right to sue on claims that "belong to the Funds and to all shareholders in general").

      **B.**    **Plaintiff Did Not Make Demand Before Filing Suit,**
              **And The Complaint Does Not Comply With Rule 23.1**

Even if plaintiff had brought his claims derivatively, they would still need to be dismissed because plaintiff first would have been required to make demand on the Fifth Third Funds' Board of Trustees to investigate his allegations and, if appropriate, to seek redress through either litigation or other means. Mass. Gen. Laws, ch. 156D, § 7.42 (Supp. 2004). He did not do so.

In addition, to assert a derivative claim in federal court, a plaintiff is required to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority." Fed. R. Civ. P. 23.1. These allegations must be set

forth in the complaint, and must be verified.  *See C.R.A. Realty Corp. v. Scor U.S. Corp.,* 1992

WL 309610, at *1 (S.D.N.Y. 1992).  This is "not a technical rule of pleading, but one of

substantive right."  *In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir. 1973).

The requirement ensures that the decision to initiate litigation is made, in the first instance, by

the board itself, and prevents shareholders from usurping that role.  *See Kamen,* 500 U.S. at 96.

Since plaintiff made no demand, the Complaint is silent on this point.

Plaintiff also would not be able to argue that demand was not required in this case,

because under Massachusetts law the requirement of demand is universal.  *See* Mass. Gen.

Laws, ch. 156D, § 7.42.[4]  Pursuant to a state statute that became effective on July 1, 2004, "no

shareholder may commence a derivative proceeding until (1) a written demand has been made

upon the corporation to take suitable action; and (2) 90 days have elapsed from the date demand

was made."  *Id.*  There are no exceptions.  *See Demoulas v. Demoulas Super Markets, Inc.,* 2004

WL 1895052, *1, n.3 (Mass. Super. Ct. 2004).  The rule enables a board to understand the

conduct complained of, and consider corrective action, before litigation is begun, and eliminates

the cost and burden to parties and the court of litigating the question whether demand was

required.  *See Werbowsky v. Collomb,* 766 A.2d 123, 140-41 (Md. 2001) (discussing policy

supporting universal demand).[5]

---

[4]     Whether the requirement of demand may be excused is determined according to the law of the state under which the entity was organized.  *Kamen,* 500 U.S. at 96-97, 108-09; *McCall v. Scott,* 239 F.3d 808, 815-16 (6th Cir. 2001).  As discussed above, the Fifth Third Funds were organized as a Massachusetts business trust, so the law of that state applies.  *See also Green,* 186 F.R.D. at 489 n.2 (Massachusetts business trusts are treated like corporations when applying Massachusetts law regarding shareholder derivative suits) (citing cases).

[5]     Even before the universal demand requirement was adopted by statute in Massachusetts, the law was clear that a plaintiff could not avoid the requirement of demand by naming trustees as defendants.  *See, e.g., Heit v. Baird,* 567 F.2d 1157, 1162 (1st Cir. 1977) ("Merely naming disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid his duty to make a demand on them."); *Jones v. Equitable Life Assurance Soc.,* 409 F. Supp. 370, 373 (S.D.N.Y. 1975) (Rule 23.1 "cannot be satisfied by simply adding the trustees as defendants"); *see also Harhen v. Brown,* 730 N.E.2d 859, 865-66 (Mass. 2000) ("mere membership on a board at the time of the alleged wrongdoing, without more, does not result in interested status," so as to excuse demand).

In sum, the Complaint does not comply with the command of Rule 23.1 to describe the steps taken, if any, to cause the Funds' board to rectify the alleged deficiencies regarding participation in class action settlements.  Nor did plaintiff take any such steps before filing suit. Under Massachusetts law, a shareholder derivative suit may not be commenced until these steps are taken.  Accordingly, for these reasons too, plaintiff's claims against the Trustee Defendants should be dismissed.

## II.     Even If Class Action Claims Were Permissible, Plaintiff Has Not Demonstrated That He Has Standing To Assert Them

Plaintiff does not plead facts establishing either that he has suffered any injury from the conduct he alleges, or that the relief he seeks would remedy any such injury.  Accordingly, even if this case could be brought as a class action, plaintiff has not demonstrated he has standing to do so.

Plaintiff has the burden of pleading facts sufficient to show he has standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Franchise Tax Bd. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 335 (1990); *Community First Bank v. Nat. Credit Union Adm.,* 41 F.3d 1050, 1053 (6th Cir. 1994).  To meet this burden, the Complaint must plead specific facts showing that he has suffered a personal injury, which is fairly traceable to defendants' conduct, and that is likely to be redressed by the relief requested.  *Lujan,* 504 U.S. at 561 & n.1; *see also Coyne ex rel. Ohio v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999).  Strict adherence to these requirements is particularly important in securities litigation to "curb the risks of vexatious litigation and abuse of discovery."  *In re Bank of Boston Corp. Secs. Litig.,* 762 F. Supp. 1525, 1531 (D. Mass. 1991).

As stated in the Complaint, Fifth Third Funds has issued shares to the public in multiple series, each of which is commonly referred to as a "mutual fund," and each of which holds a

different portfolio of securities, bonds, cash and/or other assets corresponding to a particular investment objective.  Compl. ¶¶ 3, 23.[6]  Thus, for example, there are Fifth Third funds that hold securities issued by "Fortune 500" companies, foreign businesses, "technology" concerns, and others.[7]  Indeed, as stated in the Complaint, some Fifth Third funds do not hold any equity securities at all, and instead invest solely in government bonds, corporate debt, cash or other assets.  *Id.* ¶ 23.[8]

According to the Complaint, plaintiff owned only "one of the Funds" during the alleged class period.  Compl. ¶ 10.  Nowhere does he state *which* fund he owned, or *when* he made his investment.  However, if that fund did not own any equity securities, or any securities that were the subject of the alleged settlements, then it would not have been entitled to any proceeds from such settlements, and neither its assets nor its share value would have been increased by those settlements.  In this event, plaintiff would not have suffered any injury "fairly traceable" to the defendants' alleged failure to cause the Funds to participate in those settlements.

Nor would it matter if members of the putative class owned shares of Fifth Third funds that would be entitled to settlement proceeds, even if plaintiff's fund would not.  As the Supreme Court has held, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey,* 518 U.S.

---

[6]     The Complaint states that there are 27 such investment series, *id.* ¶ 23, but the correct number is 35.  *See* Fifth Third Funds, Combined Statement of Additional Information ("SAI"), *set forth in* Fifth Third Funds, Registration Statement, *supra* note 3, at 1.  (The Registration Statement contains prospectuses for all Fifth Third mutual funds (Part A), followed by the SAI (Part B).)  In this memorandum, each Fifth Third Funds investment series is referred to as a "Fifth Third fund."

[7]     *See* Fifth Third Funds, SAI, *supra* note 6, at 1.  For convenience, the first page of the SAI is attached to Smith Decl., at Ex. B.

[8]     *See also* Prospectus for Stock and Bond Mutual Funds, Asset Allocation Funds, and Money Market Mutual Funds, Classes A, B and C Shares, at 40-62 (describing funds' investment objectives), *set forth in* Fifth Third Funds Registration Statement (Part A), *supra* note 3.

343, 357 (1996). *See also Adair v. Sorenson,* 134 F.R.D. 13, 16 (D. Mass. 1991) (court must

assess standing "based upon the standing of the named plaintiff," not putative class members).

Finally, even if plaintiff did own shares in a fund that invested in securities that were

subject to "unclaimed" settlements, as alleged in the Complaint, he would have no standing to

assert claims on behalf of shareholders in *other* Fifth Third funds. For example, in *Nenni v.*

*Dean Witter Reynolds, Inc.,* 1999 U.S. Dist. LEXIS 23351 (D. Mass. 1999), plaintiffs filed a

complaint on behalf of an alleged class of individuals who had purchased shares in any of forty-

one different mutual funds. *Id.* at *2. The district court held that the plaintiff only had standing

to bring claims on behalf of investors in the four funds in which he owned shares. *Id.* at *5-6.

According to the court, "[a] named plaintiff must share the same injury with the others he or she

represents in order to have standing as the class representative." *Id.* at *6. *See also Kauffman v.*

*Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3d Cir. 1970) (no standing to sue on behalf of investors

in funds plaintiff does not own); *In re Eaton Vance Corp. Sec. Litig.,* 219 F.R.D. 38, 41 (D.

Mass. 2003) (same); *see also Williams v. Bank One Corp.,* 2003 WL 22964376, at *1-2 (N.D. Ill.

2003) (no standing to sue on behalf of funds in which no shares are owned).

Plaintiff does not plead specific facts to show he has standing in this case. *Coyne,* 183

F.3d at 494-95. Because he may not "rest his claim to relief on the legal rights or interests of

third parties," *Warth v. Seldin*, 422 U.S. 490, 499 (1975), this case should be dismissed.

### III. Plaintiff Has No Private Right Of Action Under Section 36(a) Of The ICA

The Complaint alleges that, under Section 36(a) of the ICA, all defendants "are deemed

to have a fiduciary duty to the Plaintiff and all members of the class," which defendants allegedly

breached "by failing to submit Proof of Claim forms or otherwise participate in settled securities

class actions." Compl. ¶¶ 38-39. This claim should be dismissed because Section 36(a) does not

grant plaintiff a private right of action against the Trustee Defendants. Instead, the statute expressly authorizes the "Commission," *i.e.*, the SEC, to bring an action against mutual fund directors and other persons for "breach of fiduciary duty involving personal misconduct in respect of any registered investment company." 15 U.S.C. § 80a-35(a).

Plaintiff may argue that he has an implied right of action under Section 36(a). However, recent Supreme Court precedent on private rights of action generally, and case law applying this precedent to the ICA, including Section 36(a) in particular, preclude such a finding.

### A. Implied Private Right Of Action Must Be Clear In Language And Structure Of Statute

When considering whether an implied right of action exists, "what must ultimately be determined is whether Congress intended to create the private remedy asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15-16 (1979). In *Alexander v. Sandoval,* 532 U.S. 275 (2001), the Court squarely focused this analysis on the language of the statute:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy . . . . Statutory intent on this latter point is determinative. . . . Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

532 U.S. at 286-87 (internal citations omitted). One year later, the Court reinforced this approach, holding that a district court should not find a private right of action in the absence of "clear and unambiguous" congressional intent to create such a remedy, as evidenced by the text and structure of the statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-86, 290 (2002). *See also Care Choices HMO v. Engstrom,* 330 F.3d 786, 789 (6th Cir. 2003) (following *Sandoval*, private right of action is implied when statute manifests intent to create both right and remedy).

Applying these principles, the U.S. Court of Appeals for the Second Circuit has found that no private right of action exists under Sections 26(f) and 27(i) of the ICA. *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002). Adhering to the Supreme Court's instruction that congressional intent is determinative, the Second Circuit held that "[a] court must 'begin [its] search for Congress's intent with the text and structure' of the statute . . . and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Id.* Because "[n]o provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i)," the court ruled, "we must presume that Congress did not intend one." *Id.*

The Second Circuit found this presumption was strengthened by the fact that Sections 26(f) and 27(i) "do not contain rights-creating language." *Id.* According to the court, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Id.* at 433 (quoting *Sandoval*, 532 U.S. at 289) (internal citations omitted).

The court of appeals also noted that Section 42 of the ICA empowers the SEC -- not private litigants -- to enforce all provisions of the statute through investigations and civil suits for injunctions and penalties. *Olmsted,* 283 F.3d at 433. To the court, this section suggested that Congress had intended a different means of enforcing the statute than through private litigation. *Id.; see also Transamerica Mortgage*, 444 U.S. at 19 ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").

Finally, the Second Circuit found it compelling that Congress had created an express right of action to challenge excessive management fees charged by mutual fund advisers under Section 36(b) of the ICA, but had not created any such right under Sections 26(f) and 27)(i):

"Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional." *Olmsted*, 283 F.3d at 433. Clearly, if Congress had intended to grant private litigants a right the right to sue under these sections, "it knew how to do so." *Id*.

**B.     Congress Did Not Intend To Create A Private Right
Of Action To Enforce Duties Created In Section 36(a)**

As *Sandoval* and *Olmsted* make clear, the starting point for considering whether an implied right of action under Section 36(a) is the text of the statute itself. Here, the statutory language does not support the conclusion that an implied private right of action is intended.

In relevant part, that section provides as follows:

> *The Commission* is authorized to bring an action in the proper
> district court of the United States . . . alleging that a person serving
> or acting in one or more of the following capacities has engaged
> . . . in any act or practice constituting a breach of fiduciary duty
> involving personal misconduct in respect of any registered
> investment company for which such person so serves or acts--
> (1) as officer, director, member of any advisory board, investment
> adviser, or depositor . . .

15 U.S.C. § 80a-35(a) (emphasis added). The text of Section 36(a) explicitly provides a right of action to the SEC, not private plaintiffs. It focuses on persons regulated, not those protected. And in the very next sub-section of the Act, Section 36(b), the ICA expressly grants investors a private right of action to enforce a "fiduciary duty with respect to the receipt of compensation for services" by investment advisers. 15 U.S.C. § 80a-35(b). Plainly, Congress knew how to provide mutual fund shareholders rights of action to enforce the duties created by the ICA, but it chose not to do so with respect to Section 36(a). *See BFP v. Resolution Trust Corp*., 511 U.S. 531, 537 (1994) ("[i]t is generally presumed that Congress acts intentionally and purposefully when

it includes particular language in one section of a statute but omits it in another") (quoting *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994)).[9]

In considering this same question, the U.S. District Court for the Eastern District of New York recently held that "when *Olmsted* and *Sandoval* are applied to ICA § 36(a), it is evident that the provision does not give rise to a private right of action." *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 WL 195520, at *4 (E.D.N.Y. 2005). The district court held that, since the text of Section 36(a) does not expressly provide for a private right of action, it must "presume that Congress did not intend to create one." *Id.* at *2. Indeed, according to the court, the fact that Section 36(a) provides for an "alternative method of enforcement" -- Commission action -- "suggests that Congress intended to preclude others." *Id.* at *3 (quoting *Sandoval,* 532 U.S. at 290, and *Olmsted,* 283 F.3d at 433). The court also found the statute contained no language creating rights for investors, focusing instead on the "persons regulated," and mentioning investors only with reference to the remedies a court could order in an action brought by the Commission. *Id.* at *3. According to the court, "if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." *Id.*

Based on *Sandoval* and *Olmsted*, several district courts have also refused to find implied private rights of action under other sections of the ICA. *See, e.g., DH2, Inc. v. Athanassiades,* 2005 WL 589004, at *4-6 (N.D. Ill. 2005) (no private right of action under ICA § 17(j)); *In re Van Wagoner Funds, Inc. Sec. Litig.,* 2004 WL 2623972, *12 (N.D. Cal. 2004) (no private right of action under ICA § 34(b)); *Merrill Lynch,* 272 F. Supp. 2d at 255-59 (same); *White v.*

---

[9]     *See also Gonzaga,* 536 U.S. at 284 n.3 (private rights conferred by explicit and unambiguous statutory grant); *Northern Nat. Gas Co. v. Munns,* 254 F. Supp. 2d 1103, 1118 (S.D. Iowa 2003) ("the question is not simply who would benefit from a federal statute, but whether Congress intended to confer federal rights upon those beneficiaries"), *aff'd,* 377 F.3d 817 (8th Cir. 2004).

*Heartland High-Yield Mun. Bond Fund,* 237 F. Supp. 2d 982, 987-88 (E.D. Wis. 2002) (no private right of action under ICA §§ 22 or 34).

Indeed, in an decision that employed this same analysis -- and which presaged both *Sandoval* and *Olmsted* -- Chief Judge Carl Rubin of this Court ruled in 1982 that an investor had no private right of action to enforce Section 7(a) of the ICA. *M.J. Whitman & Co., Inc. Pension Plan v. American Financial Enter., Inc.,* 552 F. Supp. 17, 22 (S.D. Ohio 1982), *aff'd on other grounds,* 725 F.2d 394 (6th Cir. 1984).[10] According to Chief Judge Rubin, while the "express intention of the ICA [is] to protect the interests of shareholders . . . whether Congress intends protection of these interests to be enforced by private litigation, is a separate and distinct question." *Id.* at 19. The Court considered the fact that Congress had authorized the SEC to enforce the statute through Section 42, and had expressly created a private right of action in Section 36(b), and concluded that Congress did not intend to grant private rights of action to enforce the other sections of the statute. *Id.* at 19-22. In fact, with respect to Section 36(b), Chief Judge Rubin reviewed the ICA's legislative history, and found that when Congress created the private right of action in Section 36(b), it made clear that its action should not be construed as affecting any other section of the statute, *including Section 36(a). Id.* at 21-22.

While, prior to *Sandoval* and *Olmsted,* a number of courts found implied rights of action under the ICA, including Section 36(a), that case law is no longer good precedent. As the Second Circuit concluded in *Olmsted,* those decisions are inconsistent with the analysis now mandated by the Supreme Court, and "belong to an '*ancien regime*.'" 283 F.3d at 434 (quoting *Sandoval,* 532 U.S. at 287 (internal quotation marks omitted)). *See also Bonano v. East Caribbean Airline Corp.,* 365 F.3d 81, 86 n.4 (case finding private right of action "lack[s]

---

[10] ICA § 7(a) prohibits investment companies from purchasing or selling securities without first registering with the SEC. 15 U.S.C. § 80a-7(a).

continued vitality" after *Sandoval*). Indeed, the district court in *Chamberlain* held that because *Olmsted* found a number of prior cases involving claims under Section 36(a) to be part of the *ancien regime*, "this Court is no longer bound to follow [them]." *Chamberlain*, 2005 WL 195520, at *4. Numerous other district courts have reached the same conclusion. *See meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616, 621-23 (S.D.N.Y. 2003) (following *Sandoval,* no private right of action exists under ICA § 12(d)(1), despite previous decisions to the contrary); *Merrill Lynch*, 272 F. Supp. 2d at 255-59 (same with respect to ICA § 34(b)); *Heartland High Yield Mun. Bond Fund*, 237 F. Supp. 2d at 987 (same with respect to ICA §§ 22 and 34(b)); *Dorchester Investors*, 134 F. Supp. 2d at 581 (same); *see also M.J. Whitman,* 552 F. Supp. at 19-20 (declining to follow cases finding private rights of action under the ICA as inconsistent with developing Supreme Court precedent).

Prior decisions of the "*ancien regime*" provide no support for plaintiff's claim in this case. Plaintiff has no private right of action under Section 36(a), and his claim against the Trustee Defendants under that provision of the ICA must be dismissed.[11]

## IV.    Plaintiff's Common Law Claims Are Legally Defective

Plaintiff asserts two common law claims against the Trustee Defendants: breach of fiduciary duty (Count I), and negligence (Count II). Neither of these counts states a legal claim. For these reasons, in addition to those discussed above, these counts should be dismissed.

As to Count I, since plaintiff filed his Complaint as a class action, instead of as a derivative suit, he must show that the Trustee Defendants breached fiduciary duties owed to him

---

[11]    Even if there were a private right of action under § 36(a), plaintiff's claim would not be sufficient to plead that the Trustee Defendants violated the statute. In particular, Section 36(a) prohibits "any act or practice constituting a breach of fiduciary duty involving *personal misconduct*." 15 U.S.C. § 80-35(a) (emphasis added). Accordingly, a plaintiff would have to allege facts sufficient to prove that fund directors engaged in misconduct that benefits themselves "at the expense of the funds," *In re Nuveen Fund Litig.*, 1996 WL 328006, at *11 (N.D. Ill. June 11, 1996), or that blindly allows an investment adviser to engage in self-dealing. *Id.* at *12. In this case, no such facts exist or have been alleged.

directly. *See* Compl. ¶¶ 31, 36. Under Massachusetts law, however, "[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders." *Jernberg v. Mann,* 358 F.3d 131, 135 (1st Cir. 2004) (quoting 14A Howard J. Alperin and Lawrence D. Shubow, *Massachusetts Practice, Summary of Basic Law,* § 8.85 (3d ed. 1996)). *See also Demoulas v. Demoulas Super Markets, Inc.,* 677 N.E.2d 159, 179-80 (Mass. 1997) ("The directors of a corporation stand in a fiduciary relationship *to the corporation.*") (emphasis added).[12] Indeed, the Complaint itself alleges that the duties supposedly breached by the Trustee Defendants were duties owed to the Funds -- not the shareholders. Compl. ¶¶ 1, 5, 25. *See also Blasberg,* 934 F. Supp. at 26 (claim for alleged breach of duty that reduces corporate assets belongs to corporation itself); *Cigal,* 557 N.E.2d at 1123 ("fiduciary duty on which the plaintiffs base their claim is a duty owed to the corporation, not to individual stockholders"). Accordingly, Count I fails to state a claim and should be dismissed.

As to Count II, the Trustee Defendants also are not subject to shareholder claims based on "negligence." Under Massachusetts law, the responsibilities a corporate director owes to the corporation's shareholders are anchored in the duties the director owes to the corporation. *Jernberg,* 358 F.3d at 135.[13] In performing those duties, moreover, directors are protected by the business judgment rule. Under that cardinal principle of corporate governance, directors are shielded from claims based on "mere errors of judgment or want of prudence." *Ellis v. Varney,* 2004 WL 574827, at *37 (Mass. Super. Ct. 2004) (citing *Allied Freightways v. Cholfin,* 91

---

[12]     Massachusetts law applies to plaintiff's common law claims since they arise out of the relations among a business trust, its trustees, and its shareholders. *See, e.g., McCall,* 239 F.3d at 814, 817-18 (applying Delaware law to breach of duty claims against directors of Delaware corporation headquartered in Nashville); *see also Edgar v. MITE Corp.,* 457 U.S. 624, 645 (1982); *Marx v. Centran Corp.,* 747 F.2d 1536, 1547 (6th Cir. 1984); Restatement (Second) of Conflict of Laws, § 302 & comment e (1971 & Supp. 2004).

[13]     Also for this reason, as with Count I, no "breach of duty" claim, including any "negligence claim," could be brought directly by a shareholder against the Trustee Defendants.

N.E.2d 765, 768 (Mass. 1950)).  Thus, "[n]egligence or a failure to use reasonable care in a trustee's management decision does not amount to a cause of action."  *Pederzani v. Guerriere,* 1995 WL 1146832, at *1 (Mass. Super. Ct. 1995).[14]

While, in Massachusetts, corporate directors may be answerable for "clear and gross negligence" in the performance of their duties, *see Allied Freightways,* 91 N.E.2d at 768; *Ellis,* 2004 WL 574827, at * 37, neither Count I nor Count II states a claim based on such conduct. As discussed above, Count II alleges "simple" negligence, which, even if demonstrated, would not establish "clear and gross" negligence on the part of the Trustee Defendants.  *Pederzani,* 1995 WL 1146832, at *1.  As to Count I, while plaintiff "salts" the Complaint with an assertion that "the Defendants acted with reckless and willful disregard for the rights of Plaintiff," Compl. ¶ 34, he does not plead any facts whatsoever to support it.  The Court is not required to accept legal conclusions or unwarranted factual inferences in considering a motion to dismiss.  *See, e.g., Eubanks,* 385 F.3d at 897; *Ford Motor,* 381 F.3d at 604; *see also* Moore's Federal Practice § 12.34[1][b] (3d ed. 1997) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").  Moreover, as discussed above, any such claims could only be brought derivatively, on behalf of the Funds, and not, as plaintiff has here, by a shareholder in a direct action.

Accordingly, for these reasons, in addition to the others discussed above, plaintiff's common law claims fail as a matter of law.

---

[14]    In this regard, the Fifth Third Funds Declaration of Trust expressly provides that the Trustees "shall be liable for their willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of the office of Trustee . . . as the case may be, *and for nothing else.*"  Smith Decl., Ex A, art. XI, § 2 (emphasis added).  Such a limitation on liability is valid under Massachusetts law, *see Marantz Co., v. Clarendon Indus., Inc.,* 670 F. Supp. 1068, 1073  (D. Mass. 1987), and underscores that claims may not be maintained against the Trustee Defendants based on any alleged "negligence" in the conduct of their duties.  *See, e.g., McMichael v. U.S. Filter Corp.,* 2001 WL 418981, at *8 (C.D. Cal. 2001).

## <u>CONCLUSION</u>

For the foregoing reasons, all claims in the Complaint against Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey should be dismissed with prejudice.

Respectfully submitted,


    /s/ Thomas B. Smith
Todd H. Bailey (0002407)
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202
Tel. (513) 455-7637
Fax  (513) 762-7937

-and-

Thomas B. Smith
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC  20005
Tel. (202) 508-4600
Fax (202) 508-4650

*Counsel for Defendants David J. Durham,*
*J. Joseph Hale, Jr., John E. Jaymont, David J.*
*Gruber, and Edward Burke Carey*


Dated:  March 30, 2005