# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN HAYES, on Behalf of Himself and All Others Similarly Situated, | §<br>§<br>§<br>§<br>§ |
| Plaintiff, | §<br>§ |
| v. | §<br>§     Case No. 05-CV-0028<br>§ |
| DAVID J. DURHAM, J. JOSEPH HALE, JR., JOHN E. JAYMONT, DAVID J. GRUBER, EDWARD BURKE CAREY, FIFTH THIRD BANCORP, FIFTH THIRD ASSET MANAGEMENT, INC., and JOHN DOES NO. 1 through 100, | §<br>§<br>§<br>§<br>§<br>§<br>§ |
| Defendants. | §<br>§ |
| | § (many)|
| JURY TRIAL DEMANDED | § |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# **Table of Contents**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    PLAINTIFF HAS STANDING TO BRING CLAIMS AGAINST ALL
          FUNDS WITHIN THE FIFTH THIRD FAMILY OF FUNDS . . . . . . . . . . . . . . 3

          1.    Plaintiff has standing to bring a direct action against the
                advisors, directors, and affiliates of the investment
                company in which he owns shares . . . . . . . . . . . . . . . . . . . . . . . 4

          2.    Defendants' "standing" argument is premature prior to
                a Motion for Class Certification . . . . . . . . . . . . . . . . . . . . . . . . 5

          3.    Plaintiff may represent other members of the putative
                class since his claims are based on the same legal
                theories and arise from the same scheme and course
                of conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.    PLAINTIFF'S CLAIMS ARE PROPERLY PLEAD AS A DIRECT ACTION . 7

          1.    Plaintiff's claims are properly brought as a direct action
                because Plaintiff alleges an injury directly to Plaintiff
                and a breach of a duty owed directly to Plaintiff . . . . . . . . . . . . 8

          2.    Rule 23.1 does not apply to this direct action . . . . . . . . . . . . . . 12

     C.    FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFF . . 12

          1.    Long established jurisprudence, statutory intent, and
                legislative history supports plaintiff's private right of
                action under ICA § 36(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.    Plaintiff has sufficiently plead a claim under ICA § 36(a) . . . . . . 15

          3.    Plaintiff has sufficiently plead a claim under ICA § 36(b) . . . . . . 16

          4.    ICA § 47(b) provides a remedy for violations of other
                ICA sections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     D.    FIFTH THIRD BANCORP SHOULD NOT BE DISMISSED . . . . . . . . . . . . 18

# <u>Table of Authorities</u>

## <u>Federal Cases</u>

*Alexander v. Sandoval*, 532 U.S. 275 (2001)

*Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 285 F.2d 731 (3d Cir. 1987)

*Blatt v. Merrill Lynch*, 916 F.Supp. 1343 (D.N.J. 1996)

*Brown v. Bullock*, 294 F.2d 472 (2d Cir. 1961)

*Brouk v. Managed Funds, Inc.*, 286 F.2d 901 (8th Cir. 1961)

*Carr v. Equistar Offshore Ltd.*, 1995 U.S. Dist. LEXIS 13703 (S.D.N.Y. Sept. 21, 1995)

*Conley v. Gibson*, 355 U.S. 41 (1957)

*Daily Income Fund v. Cox*, 464 U.S. 523 (1984)

*In re: Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)

*EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)

*Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330 (5th Cir. 1972)

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968)

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)

*Farragut Mortgage Co., Inc. v. Arthur Anderson, LLP* 1999 WL 823656 (Mass. Super 1999)

*Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981)

*Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158 (7th Cir. 1996)

*Galfand v. Chestnutt Corp.*, 545 F.2d 807 (2d Cir. 1976)

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)

*Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003)

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)

*Kamen v. Kemper Fin. Svcs.*, 500 U.S. 90 (1991)

*Krantz v. Prudential Invs. Fund Mgmt.*, 77 F.Supp.2d 559 (D.N.J. 1999)

*Langer v. Brown*, 913 F.Supp. 260 (S.D.N.Y. 1996)

*Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000)

*Levitt v. Johnson*, 334 F.2d 815 (1st Cir. 1964)

*Mann v. Kemper Fin. Co., Inc.*, 618 N.E.2d 317 (Ill. App. Ct. 1992)

*Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993)

*McLachlan v. Simon*, 31 F.Supp.2d 731 (N.D. Cal. 1998)

*Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990)

*Meyer v. Oppenheimer Mgmt. Corp.* 764 F.2d 76 (2d Cir. 1985)

*Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321 (4th Cir. 2001)

*In re: ML-Lee Acquisition Fund II*, 848 F.Supp. 527 (D.Del. 1994)

*In re: Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, 1996 WL 328006, No. 94-C-360 (N.D. Ill. June 11, 1996)

*Olmstead v. Pruco Life Ins.*, 283 F.3d 429 (2d Cir. 2002)

*Panfil v. Scudder Global Fund, Inc.*, 1993 WL 532537 (N.D. Ill. 1993)

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002)

*Pegram v. Herdrich*, 530 U.S. 211 (2000)

*Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253 (6th Cir. 1994)

*Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924 (S.D.N.Y. Aug. 26, 2004)

*In re: Prudential Sec. Inc., Ltd. P'shp Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)

*Rippy v. Hattaway*, 270 F.3d 416 (6th Cir. 2001)

*Rohrbaugh v. Inv. Co. Inst.*, 2002 U.S. Dist. LEXIS 13401 (D.D.C. July 2, 2002)

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988)

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)

*Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534 (D.Del. Oct. 14, 1994)

*Sosna v. Iowa*, 419 U.S. 393 (1975)

*Strigliabotti v. Franklin Resources*, 2005 WL 645529 (N.D. Cal. March 7, 2005)

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002)

*In re: Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998)

*Taussig v. Wellington Fund, Inc.*, 313 F.2d 472 (3d Cir. 1963)

*Tennenbaum v. Zeller*, 552 F.2d 402 (2d Cir. 1977)

*United States v. Cartwright*, 411 U.S. 546 (1973)

*Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914 (S.D. Tex. 1998)

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003)

## State Cases

*Letsos v. Century 21-New West Realty*, 675 N.E.2d 217 (Ill. App. Ct. 1996)

*Royal Carbo Corp. v. Flameguard, Inc., et al.*, 229 A.D.2d 430 (N.Y. App. Div. 1996)

## Legislative/Statutory Materials

15 U.S.C. § 80a-1 (2005)

15 U.S.C. § 80a-8 (2005)

15 U.S.C. § 80a-35 (2005)

15 U.S.C. § 80a-36 (2005)

15 U.S.C. § 80a-46 (2005)

Fed. R. Civ. P. 8 (2005)

Fed. R. Civ. P. 12(b)(6) (2005)

Fed. R. Civ. P. 23 (2005)

H.R. Pub. L. No. 96-477 (1980), reprinted in U.S.C.C.A.N. 4800, 4810–11)


**Secondary Materials**

American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(b) (1994)

James D. Cox & Randall S. Thomas, "Leaving Money on the Table: Do Institutional Investors Fail to File Claims in Securities Class Actions?" 80 WASH. U. L.Q. 855 (2002)

Fifth Third Funds, Annual Report to Shareholders (July 31, 2004) *available at* www.53.com/wcm/connect/FifthThirdSite/Personal/Investments+&+Wealth+Management/Investments/Mutual+Funds/.

RESTATEMENT (SECOND) AGENCY § 469 (1958)

David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer," 112 BANKING L.J. 757 (1995)

Alison Sahoo, *SEC Probing Funds' Participation in Class Actions* (February 3, 2004), *at* www.ignites.com

## INTRODUCTION

Plaintiff John Hayes ("Plaintiff") brings this putative class action against the advisors, trustees and affiliates of the Fifth Third Family of Mutual Funds (collectively the "Fifth Third Defendants"). Plaintiff alleges that the Fifth Third Defendants breached their fiduciary duties owed to Plaintiff and other Fifth Third mutual fund holders and violated sections 36(a) and 36(b) of the Investment Company Act of 1940 ("ICA") by failing to ensure that the Fifth Third funds participated in securities class actions for which they were eligible.

Defendants' Motions to Dismiss are without merit and should be denied.[1] Rather than attack Plaintiff's Complaint based upon its merits as a direct action, the Fifth Third Defendants deftly attempt to recast the matter as a derivative suit and proceed to argue why it fails as such. *See, e.g.* Corporate Defendants Motion to Dismiss, at 1 ("Plaintiff brought a derivative action"). While the Fifth Third Defendants provide examples of how this matter *could* have been brought alternatively as a derivative, they fail to cite a single case which holds that this matter cannot properly be brought as a direct action. Moreover, the Fifth Third Defendants then argue that not even a derivative suit can be sustained. Under the Fifth Third Defendants' view of the law, there is no procedural mechanism for Plaintiff and other investors to seek recovery for the injuries they have suffered and the Defendants can manage the putative class members' investments with impunity.

Even more illustrative than the contents of the Motion to Dismiss is what is left out. The Fifth Third Defendants do not dispute, even in passing, the central element underlying Plaintiff's claims, namely that the Fifth Third Defendants have failed to file proof of claims in settled securities cases and as a result have prevented Plaintiff and the putative class from recovering money to which they were rightfully entitled. The Fifth Third Defendants' malfeasance is emblematic of widespread problems in the mutual fund industry. Professors at Duke and Vanderbilt have conducted empirical studies and estimated that over seventy percent of institutional investors have failed to participate

---

[1]    Defendants Fifth Third Bancorp and Fifth Third Asset Management, Inc. filed a joint motion to dismiss. Separately, Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber and Edward Burke Carey jointly filed a motion to dismiss. The respective motions to dismiss are nearly identical in their theories and arguments. As such, Plaintiff files this opposition to both Motions to Dismiss.

1

in securities class action settlements. James D. Cox & Randal C.S. Thomas, *Leaving Money on the Table: Do Institutional Investors Fail to File Claims in Securities Class Actions?*, 80 WASH. U. L.Q. 855 (2002)(copy attached as Exhibit 1). Shortly after this case was filed, the Securities and Exchange Commission launched an investigation into the issue. Alison Sahoo, *SEC Probing Funds' Participation in Class Actions* (February 3, 2004), *at* www.ignites.com (Copy attached as Exhibit 2).

As demonstrated in this brief, Plaintiff has standing to bring these claims as a direct action and therefore as a putative class action, and has sufficiently plead claims for breach of fiduciary duty, negligence, violations of sections 36(a), 36(b), and an equitable remedy provided under 47(b) of the ICA. Accordingly, the Fifth Third Defendants' motion should be denied.

## ARGUMENT

Defendants claim that Plaintiff's complaint is not sufficiently, factually specific and does not comport with federal notice pleading standards. *See EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (noting that "The Federal Rules of Civil Procedure provide for a liberal system of notice pleading"). The purpose of this pleading standard is to protect the wronged party who finds himself in the very situation Plaintiff resides herein, where Defendants have perfect and full knowledge of the scope of the wrongdoing, and Plaintiff is forced to rely on publicly available information that admittedly does not fully tell the story. To allow Defendants to hide within their informational "black box" only perpetuates the problem Plaintiff has exposed and frustrates the purpose of pleading standards. Plaintiff's eighteen page complaint clearly is not an attempt to fish for discovery. Plaintiff has alleged a harm that he has suffered, the manner in which he was harmed, and the persons and entities responsible.

When reviewing a motion to dismiss, the court must accept as true the well-pleaded factual allegations of the complaint and view those allegations in the light most favorable to the plaintiff. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003); *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990). A motion to dismiss tests the

2

sufficiency of the complaint, not the merits of the suit. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Dismissal under Rule 12(b)(6) is deemed proper "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Yuhasz*, 341 F.3d at 562 (internal quotations and citations omitted).

A complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citation omitted). But a plaintiff need not plead facts in support of every arcane element of his claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Plaintiff's factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor. *Persian Galleries, Inc. v. Transcontinental Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994). Further, a plaintiff may later add allegations by affidavit or brief, even on appeal, to clarify allegations in the complaint. *Pegram v. Herdrich*, 530 U.S. 211, 229 (2000). Unless otherwise provided by Rule 9, the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail facts upon which a claim is based. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is required only to provide a short and plain statement of the claim "that will give the defendant fair notice of the claim and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (1957) (footnote omitted). In effect, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Conley*, 355 U.S. at 45-46.

## A.   PLAINTIFF HAS STANDING TO BRING CLAIMS AGAINST ALL FUNDS WITHIN THE FIFTH THIRD FAMILY OF FUNDS

The Fifth Third Defendants' entire argument regarding standing is based upon the incorrect premise that Plaintiff has, or should have, brought this matter as a derivative suit. Every case cited, and all analysis and argument proffered, is based upon this faulty predicate. To

3

the contrary, however, Plaintiff intended to and rightfully brings this matter as a direct action and has standing to do so.

1. **Plaintiff has standing to bring a direct action against the advisors, directors, and affiliates of the investment company in which he owns shares**

Mutual funds are not legal entities, are not organized in any corporate form, and are not required to register under the Investment Company Act or either of the Securities Acts. Investment companies, on the other hand, are legal entities, are organized under state law, and are registered with the SEC. 15 U.S.C. § 80a-8. Investment companies can and do issue series of shares of mutual funds. Mutual fund families may be comprised of one or more investment companies, which in turn may be comprised of one or more series of mutual funds. Mutual funds themselves are merely series of shares of registered investment companies–in essence, they are little more than accounting entries or a product sold and marketed for the purpose of generated pools of fee-paying customers for the investment advisors. *See, e.g.* David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer," 112 BANKING LAW JOURNAL 763, 766 (1995).

Recognizing this important distinction between mutual funds and investment companies, the ICA expressly grants standing to holders of registered investment companies, not mutual funds. *See* 15 U.S.C. 80a-35. Section 36(b) of the ICA provides; "An action may be brought under this subsection . . . by a security holder of such *registered investment company* on behalf of such company." 15 U.S.C. 80a-36(b) (emphasis added). Section 36(a) provides a cause of action for breach of fiduciary duty "in respect of any *registered investment company.*" 15 U.S.C. 80a-36(a) (emphasis added).

Plaintiff is an investor in the Fifth Third Balanced Fund and Fifth Third Micro Cap Value Fund, each of which are mutual funds within a series of funds issued by the investment company Fifth Third Funds Trust. The Fifth Third Funds Trust is an open-end management investment company consisting of thirty-five investment portfolios. *See* Statement of Additional Information for Fifth Third Funds (attached as Exhibit 3). Every fund in the Fifth Third mutual fund family is

4

a part of the Fifth Third Funds Trust. Thus, Plaintiff has individual standing to pursue claims involving all of the funds within the Fifth Third family of mutual fund offerings.

## 2. **Defendants' "standing" argument is premature prior to a Motion for Class Certification**

Once individual standing has been established as Plaintiff has above, the analysis for the purpose of the Motion to Dismiss is concluded. The separate issue of whether a plaintiff can represent a putative class depends solely on whether the plaintiff meets the requirements of Rule 23 and is thus rightfully preserved for the class certification stage. *See, e.g. Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), *cert denied*, 540 U.S. 812 (2003). As stated by the Supreme Court in *Sosna v. Iowa*:

> A named plaintiff in a class action must show that the threat of injury in a case such as this is "real and immediate," not "conjectural" or "hypothetical." . . . This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the name plaintiff representative to "fairly and adequately protect the interests of the class." Rule 23 (a).

419 U.S. 393, 402-403 (1975)(citations omitted).

Even assuming, *arguendo*, ownership of the same investment company is not sufficient for individual standing, the Rule 23 inquiry, which the Fifth Third Defendants advance under the guise of a "standing" argument, involves an examination of various factual issues and is not properly undertaken in a motion to dismiss. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" (internal citations and internal quotation marks omitted)).

The critical distinction between Article III standing and the Rule 23 inquiry was clarified in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In *Fallick*, an employee alleged that Nationwide breached its fiduciary duties with respect to the ERISA benefit plan of which he was a member and other ERISA plans of which he was not a member. The district court dismissed the

claims as to all ERISA plans other than Fallick's plan on standing grounds. *Id.* at 411-12. The Sixth Circuit reversed, holding that the district court's reasoning was "fundamentally flawed" because it confused the issues of Article III standing for a plaintiff with the Rule 23 issues applicable to his ability to sue on behalf of a class. *Id.* at 422. The court concluded that "once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Id.* at 424.

The case law is clear that once a putative class representative has established individual standing, all further standing analysis stops until the class certification stage. Defendants are improperly attempting to incorporate class certification issues into the motion to dismiss.

### 3. Plaintiff may represent other members of the putative class since his claims are based on the same legal theories and arise from the same scheme and course of conduct

Although analysis of this issue is premature, the case law makes clear that, upon a showing that the requirements of Rule 23 are met, a named plaintiff may represent a class of investors that includes investors in funds in different investment companies within the same mutual fund family and managed by the same advisors. This is so because of the substantially identical nature of the process, or lack thereof, for filing proofs of claim of the affected funds in the same mutual fund family, and the close interrelationship and juridical links of all the funds and persons and entities in the same mutual fund complex with each other. *See In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 20, 2000)(certifying named plaintiffs who invested in the Dreyfus Aggressive Growth Fund to represent purchasers in the Dreyfus Premier Aggressive Growth Fund); *Fallick*, 162 F.3d at 412 (holding an individual in one ERISA plan can represent a class of participants in numerous plans other than his own); *Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972, at *11 (S.D.N.Y. July 16, 2003).[2]

---

[2]     *Cf. In re Prudential Sec. Inc. Ltd. P'shp Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (class representatives were not required to have invested in all limited partnerships at issue, where complaint alleged a "uniform course of improper conduct and standardized sales approach applied by defendants"); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs who invested in three limited partnerships

Each mutual fund within the Fifth Third fund family was advised by the same investment advisors, and the claims of Plaintiff and putative class members are based on the same legal theories. Every holder of each Fifth Third fund suffered the same type of injury as a result of the Fifth Third Defendants' failure to fulfill their respective fiduciary duties. Because of the dominant role played by the fund advisors and parents, by proving his claims, Plaintiff will substantially prove the claims of all other class members. *See, e.g., In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94-95 (S.D.N.Y. 1998) ("Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability" (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)). Accordingly, the fact that plaintiff does not own shares in each and every fund series within the relevant investment companies will not be a significant issue at the class certification stage of this case.[3]

## B.    PLAINTIFF'S CLAIMS ARE PROPERLY PLEAD AS A DIRECT ACTION

Plaintiff has plead a cause of action based upon an injury he suffered directly as a result of Defendants nonfeasance. Although ignored by Defendants, numerous courts have found that an investor may bring a direct action, rather than a derivative action, under the ICA.[4] A clearly stated

---

could represent persons who had invested in two other limited partnerships, where the complaint alleged that investors in all five limited partnerships were victims of a single pattern of fraud by defendants).

[3]     Even if it had merit, the Defendants' "standing" argument would not even provide basis for denial of class certification. If any of the Defendants' contentions were legitimate, there are more sensible procedural mechanisms for addressing these issues at the class certification stage. For instance, the Court may allow Plaintiff to proceed and add named plaintiffs at the class certification stage, after the close of discovery, or at another point prior to trial, or the Court may order Plaintiff to provide a list of additional plaintiffs, who can be added, and the Court can deem the complaints mended *nunc pro tunc* in this regard, if the court deems it necessary.

[4]     *Kamen v. Kemper Fin. Svcs.*, 500 U.S. 90, 108 (1991) (holding action under 36(b) is direct); *Daily Income Fund v. Cox*, 464 U.S. 523, 533, fn 8 (1984) (finding direct action under 36(b)); *Stougo v. Bassini*, 282 F.3d 162, 176–77 (2d Cir. 2002) (holding direct action was appropriate under 36(a), 36(b), and 48 of the ICA); *Esplin v. Hirschi*, 402 F.2d 94, 99–100 (10th Cir. 1968); *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at * 41-42, No. 94-C-360 (N.D. Ill. June 11, 1996) (holding that 36(b) is a direct action); *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (finding that remaining claims (§§ 36(b), 10(a), 17(a), 17(d) survived after dismissal of derivative claims); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 15–18 (D. Del. Oct. 14, 1994) (holding that ICA claims that affected plaintiff personally could be maintained as a direct action); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 562 (D. Del. 1994) (holding that suit was appropriate for class action).

objective of the statute is to "protect[] all classes of investment company security holders from the special interests of directors, officers . . . and preventing investment companies from failing to protect 'the preferences and privileges of the holders of their outstanding securities.'" 15 U.S.C. § 80a-1 (2005). This congressional goal has been edified recently by the holding in *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002). There, the Second Circuit held that mutual fund investors have standing to bring direct actions asserting private rights of action under several sections of the ICA, including section 36(a). *Id*. An action that is properly brought as a direct action may also be brought as a class action (presuming the requirements of Rule 23 are met); ergo, Plaintiff's claims are properly brought as a putative class action.

> ### 1. Plaintiff's claims are properly brought as a direct action because Plaintiff alleges an injury directly to Plaintiff and a breach of a duty owed directly to Plaintiff

Derivative and direct actions are not mutually exclusive; in fact, derivative and direct claims may be brought in the same action.[5] *Empire Life Ins. Co. of America v. Valdak Corp.*, 468 F.2d 330, 334-35 (5th Cir. 1972); American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(b) (1994). Under all state laws, the critical distinction between a derivative and a direct action is that in order to bring a direct action, the plaintiff must plead an injury sustained by the individual investor or the breach of a duty owed directly to the individual investor. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996); *Strigliabotti v. Franklin Resources*, 2005 WL 645529, at *8 (N.D. Cal. March 7, 2005) (internal citations omitted); American Law Institute's PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01 (1994). Under Massachusetts law, a shareholder may maintain a direct action for an injury that directly affects the shareholder, "even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Farragut Mortgage Co., Inc.*

---

[5] The issue of whether this lawsuit could be brought, in the alternative, as a derivative is not before the court at this time and Plaintiffs therefore takes no position on this issue.

8

*v. Arthur Anderson, LLP,* 1999 WL 823656, *18 (Mass. Super 1999) (citing *Barger v. McCoy Hillard Parks,* 346 N.C. 650, 488 S.E.2d 215, 219 (N.C. 1997); *see also Lapidus v. Hecht,* 232 F.3d 679 (9th Cir. 2000) (applying Massachusetts law). As Plaintiff will demonstrate, the injury sustained by Plaintiff was distinct from the Funds' injury (and from subsequent but present investors in those funds), and Defendants owe a fiduciary duty directly to Plaintiff, Class Members, and all other fund investors.

Because of the unique structure and operation of mutual funds and investment companies, it is the individual investors, rather than the funds, who directly suffer the consequences of Defendants' failure to ensure participation in securities class action settlements. "Mutual funds are fundamentally different from most enterprises in both their structure and operation." David E. Riggs & Charles C.S. Park, "Mutual Funds: A Banker's Primer," 112 BANKING LAW J. 757, 763 (1995) [hereinafter Riggs & Park]. "A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belong to the individual investors holding shares in the fund." *Tennenbaum v. Zeller,* 552 F.2d 402, 405 (2d Cir. 1977); *see also* Riggs & Park, 112 BANKING LAW J. at 758 (mutual funds serve as "conduits between investors and investment managers for the rendering of the manager's services"). Mutual funds "do not typically have employees or any physical plant" and have "virtually no liabilities." *Id.* at 763, 767.

Each investor who pools his money with others in a mutual fund owns a proportional share of the total assets of the mutual fund. The value of each investor's portion of those pooled assets is determined by taking the market value of all of the fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities (primarily fees paid to Defendants), and dividing the result by the number of shares outstanding. *United States v. Cartwright,* 411 U.S. 546, 548 (1973). This so-called "per share net asset value" (NAV) is computed daily so that any gain or loss in fund assets is immediately allocated to the individual investors as of that specific date. Riggs & Park, 112 BANKING LAW J. at 764. Accordingly, mutual funds are unlike conventional corporations in that any increase or decrease in fund assets is immediately passed on or allocated to the fund investors as of the date of the relevant recalculation of the NAV.

Recognizing the unique structure and operation of mutual funds, the court in *Strigliabotti* recently rejected the same argument that Defendants make here and allowed the plaintiff to proceed with a direct action. In *Strigliabotti,* plaintiffs alleged fund advisors charged excessive fees. *See Strigliabotti,* 2005 WL 645529 (copy attached as Exhibit 4). Defendants contended that the fees were paid by the fund rather than the individual investors, and therefore the injury was sustained by the fund. The Court rejected this argument as illusory, noting that "[e]very dollar of expense borne by the fund is distributed to the shareholders, as a pro rata deduction from the net asset value per share." *Id.* at * 7. The Court explained: "the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis." *Id.* at *8.

The same reasoning applies here, where Plaintiff and the putative class members are injured directly by Defendants' actions because had Defendants ensured that the Funds participated in the securities class action settlements, the settlement funds would have increased the total assets held by the Funds. Such increase would have been distributed immediately to the then-current investors on a pro rata basis upon the recalculation of the NAV.

There is no concrete injury to the Fund itself; similarly, there is no injury whatsoever to shareholders who invest in the fund subsequent to the time of injury.[6] If this action were structured as a derivative, it would not as accurately nor as justly compensate the class of individuals actually harmed by the Defendants' conduct. Instead, the recovery in a derivative action allocated to the Fund would immediately be distributed through the recalculation of the Net Asset Value to the then-current shareholders, some of whom did not own shares at the time of injury and *none* of whom would own the same portion of the fund as they did at the time of injury. Furthermore, under a derivative scenario, all persons who owned shares at the time of injury but redeemed those shares before resolution of this action would be unjustly excluded from the recovery. Accordingly, since

---

[6]     In contrast, in the context of a traditional corporation, there would be no direct, objective or calculable correlation between the value of an individual share and any gains or losses in the small portion of that corporation's assets that may be invested in the market, since the value of a share of a traditional corporation is based upon numerous, subjective market forces, related to factors both internal and external to the corporation.

10

Plaintiff has alleged a direct injury to themselves and the putative class members, this case is properly brought as a direct action.

In addition, Defendants have breached a fiduciary duty owed directly to Plaintiff and the putative class members. The directors of the fund owe a fiduciary duty directly to the investors. *See, e.g.,* Cox & Thomas, *supra* at 860, 863. Further, given that a mutual fund is merely "a conduit for the rendering of investment management services, " Riggs & Park, 112 BANKING L.J. at 758, the advisors and their affiliates owe fiduciary duties directly to the individual investors just as they do to any other investors whom they advise. *Panfil v. Scudder Global Fund, Inc.,* 1993 WL 532537, at *4 (N.D. Ill. 1993); *Mann v. Kemper Financial Co., Inc.,* 618 N.E.2d 317, 327 (Ill. App. Ct. 1992) ; *see also* Cox & Thomas, 80 WASH. U. L.Q. at 863 (fund advisor is "a vendor of services to the mutual fund company, seen as having a fiduciary obligation to the fund and to the fund's shareholders").

Furthermore, Defendants' claims that they owe no duty to Plaintiff and other shareholders is the height of hypocrisy. When the Fifth Third Defendants are seeking investors' money, they highlight the professional management services that the investment advisor provides and the security of doing business with Fifth Third. For example, Fifth Third promotes that its mutual funds are "managed by seasoned professionals that you can trust."[7] Even further, Fifth Third Asset Management's direct communication to the investors belies its current claims. In a letter titled "Our Message to You" in its 2004 Annual Report to all Fifth Third fund holders, Fifth Third Asset Management's Chief Investment Officer and Chief Investment Strategist state "We appreciate the continued confidence of our customers, and we work everyday to monitor financial markets to identify risks and opportunities *on behalf of our shareholders.*" *Id.* (Emphasis added). When it is convenient to entice or placate shareholders, no attempt is made to differentiate between a duty owed to the fund or to the shareholders. In fact, just the opposite is true as the Fifth Third Defendants

---

[7]        Fifth Third Funds Stock and Bond Mutual Funds Annual Report to Shareholders (July 31, 2004) *available at,* www.53.com/wcm/connect/fifththirdsite/personal/investments+&+wealth+Management/Investments/Mutual+Funds/ (attached as exhibit 5).

affirmatively proclaim a duty owed to shareholders. It is only upon a shareholder seeking to enforce one of his rights that Fifth Third Defendants manufacturer a legal barrier between themselves and their investors.

As has been shown, Plaintiff is owed a duty by The Fifth Third Defendants and has personally and individually suffered harm as a result of The Fifth Third Defendants' breach of that duty. Accordingly, Plaintiff's allegations of breaches of duties owed directly to them and the putative class members provides a separate premise for pursuing this action directly.

> **2.     Rule 23.1 does not apply to this direct action**

Defendants assert that Plaintiff failed to comply with Federal Rules of Civil Procedure 23.1. However, as a direct action rather than derivative action has been plead, compliance with Federal Rules of Civil Procedure 23.1 is inapplicable.


**C.     FEDERAL ICA CLAIMS ARE PROPERLY ASSERTED BY PLAINTIFF**

> **1.     Long established jurisprudence supports plaintiff's private right of action under ICA § 36(a)**

In determining whether to imply a private right of action, this court must look to the statutory language, congressional intent and the statute's legislative history. *Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001). As a general matter, a statute creates a private right of action if its language is "phrased in terms of the persons benefitted." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). The Congressional declaration of policy in the ICA specifically addresses the plight of investors like the plaintiff:

> "it is hereby declared that the policy and purposes of this title, in accordance with which the provisions of this title shall be interpreted, and are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors."

15 U.S.C. § 80a-1.

Consistent with this declaration of policy, federal courts have long recognized implied private rights of action under numerous sections of the ICA .[8] More specifically, over the course of the last four decades, courts in nearly every circuit have implied such actions under section 36(a) of the ICA. *See e.g., Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) (recognizing implied rights of action for damages under section 36(a) of Investment Company Act where advisers or directors breach fiduciary duty); *McLachlan v. Simon*, 31 F.Supp.2d 731, 737 (N.D.Cal.1998) (clearly holding that a private right of action exists under 36(a)); *Young v. Nationwide Life Ins. Co.*, 2 F.Supp.2d 914, 925–26 (S.D. Texas 1998) (stating, "this Court is also persuaded that a private cause of action should and does exist under § 36(a) of the ICA"); *In re Nuveen Fund Litig.*, No. 94-C-360, 1996 WL 328006, at *6 (N.D.Ill. June 11, 1996) ("Accordingly, the court accepts Magistrate Judge Bobrick's recommendation to imply private rights of action under ICA § 34(b) and ICA § 36(a)."); *Seidel v. Lee*, No. Civ A. 93-494, 1994 WL 913930, at * 2 (D.Del. Oct. 14, 1994) (refusing to dismiss plaintiffs' 36(a) individual claims); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F.Supp. 527, 539–45 (D.Del.1994) ("Thus, the Court believes Congress intended courts to continue to imply private rights of action for conduct proscribed under section 36(a)"); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir.1968), *cert. denied*, 394 U.S. 928 (1969) (court considering issue of private right of action on its own motion); *Levitt v. Johnson*, 334 F.2d 815, 819 (1st Cir.1964), *cert. denied*, 379 U.S. 961 (1965) (finding private right of action was consistent with policy and case law), *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731, 735 (3d Cir.1987) (holding that creation of private right of action under 36(b) did

_____

     [8]   *See, e.g., Bancroft Convertible Fund, Inc. v. Zico Investment Holdings Inc.*, 825 F.2d 731, 733 (3d Cir. 1987) (holding private right of action is proper under ICA § 10); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 87–88 (2d Cir. 1985) (finding private rights of action under ICA sections 15(f) & 36(b)); *Esplin v. Hirschi*, 402 F.2d 94, 102–03 (10th Cir. 1968); *Taussig v. Wellington Fund, Inc.*, 313 F.2d 472, 475–76 (3d Cir. 1963) (finding private right of action under 35(d)); *Brown v. Bullock*, 294 F.2d 415, 421 (2d Cir. 1961) (implying private right under §§ 15 and 37)); *In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8071, at * No. 94- C-360 (N.D. Ill. June 11, 1996) (implying private rights of action under §§ 34 (b), 36(a)); *Langner v. Brown*, 913 F. Supp. 260, 268–70 (S.D.N.Y. 1996) (implying private rights of action for §§ 10(a), 36(b), 17(a), 17(d), 20); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1349 (D.N.J. 1996) (implying private rights of action under §§ 7(d), 13(a)(3)); *Carr v. Equistar Offshore, Ltd.*, 1995 U.S. Dist. LEXIS 13703, at * 42–45 (S.D.N.Y. Sept. 21, 1995) (finding private right of action under § 7(d)); *Seidel v. Lee*, 1994 U.S. Dist. LEXIS 21534, at * 20–24 (D. Del. Oct. 14, 1994) (implying rights of action under §§ 36(a), 56(a), 57(a), 57(d)), 17(j)); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 541 (D. Del. 1994) (finding private rights of action under §§ 17(j), 36, 48, 57).

not destroy private rights of action under other sections of the ICA). Only the Eighth Circuit refused to imply a private cause of action, but that holding was thrown into doubt by a later decision of that circuit. *See Brouk v. Managed Funds, Inc.*, 286 F.2d 901, 912 (8th Cir.1961), *cert. denied*, 366 U.S. 958), *vacated as moot per curiam*, 369 U.S. 424 (1962), *later questioned in Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 793 (8th Cir.1967).

An important consideration in these decisions is that implied rights of action under section 36(a) have consistently been supported by the legislative history each time the ICA has been amended. For example, in *Bancroft*, the Third Circuit stressed that Congress expressly encouraged private actions in the legislative history to the 1980 amendments:

> "The Committee wishes to make plain that it expects the courts to imply private rights of action under this legislation, where the plaintiff falls within the class of persons protected by the statutory provision in question. Such a right would be consistent with and further Congress' intent in enacting that provision, and where such actions would not improperly occupy an area traditionally the concern of state law. In appropriate instances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act. With respect to business development companies, <u>the Committee contemplates suits by shareholders as well as by the Commission, since these are the persons the provision is designed to protect, and such private rights of action will assist in carrying out the remedial purposes of Section 36.</u>"

*Bancroft Convertible Fund v. Zico Holdings Inv.*, 825 F.2d at 736 (*quoting* H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28-29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4800, 4810-11). The Third Circuit concluded: "Clearly, the Committee Report expressly approves the position of those courts which, following the 1970 amendments, held that private causes of action should be implied from the Investment Company Act." *Id.* at 733, 736.

After reviewing this and other legislative history, the court in *Young v. Nationwide Life Ins.*, reached the same conclusion. 2 F.Supp.2d 914, 925 (S.D. Tex. 1998). The *Young* court also highlighted the 1969 amendments: "Furthermore, when §36 was amended in 1969 and an express private remedy was added to subsection (b), the legislative history indicates that 'the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a)'" *Id.* (*quoting* S.REP. No. 91-184, at 16 (1969)). The *Young-*

court concluded: "In this case, there is only one definitive answer that can be gleaned from the legislative history of the 1980 amendments: Congress expects courts to imply private rights of action. The Court cannot ignore such strong Congressional sentiments." *Id.*[9]

Relying on *Olmstead v. Pruco Life Ins.*, 283 F.3d 429 (2d Cir. 2002) and *Chamberlain v. Aberdeen Asset Management Ltd.*, 2005 WL 195520 (E.D.N.Y., Jan. 21, 2005), the Defendants ask this court to ignore these Congressional sentiments and to abandon the decades of jurisprudence discussed above. It is important to note that in *Olmstead* , the Second Circuit addressed claims under ICA sections 26(f) and 27(i), neither of which is at issue here. However, in *Strougo v. Bassini*, 282 F.3d 162, (2d Cir. 2002), decided contemporaneously with *Olmstead,* the Second Circuit did directly address 36(a). The Second Circuit joined the many other circuit and district courts in implying a private right of action, explaining: "We thus see nothing in the general policies of the ICA that would militate against importing Maryland's rules of shareholder standing for claims brought for alleged violations of the ICA sections cited by the plaintiff.... We hold that the plaintiff's alleged injuries associated with coercion support direct claims under both Maryland law and, in this case, §§ 36(a), 36(b), and 48 of the ICA." *Id.* at 176–77.

In summary, because this action is brought by a mutual fund investor, pursuant to statutory provisions intended to protect such a class, jurisprudence implying private rights of action under the ICA, legislative history, and statutory intent all support the rights asserted by Plaintiff.

## 2.    Plaintiff has sufficiently pled a claim under ICA § 36(a)

ICA § 36(a) prohibits " any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect to the registered investment company." 15 U.S.C. § 80a-35(a). Contrary to Defendants' argument, violations of section 36(a) are not limited to the context of "self-dealing." In *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914 (S.D. Tex. 1998), the court specifically rejected this argument, relying, in part, on the legislative history,

---

[9]    Additionally, another court stated that the legislative history addressing 36(a) demonstrates an "enthusiastic expression of [congressional] intent" *In re: Nuveen Fund Litig.*, 1996 WL 328006, at *6 (N.D. Ill. June 11, 1996).

which provides that "any '*nonfeasance of duty or abdication of responsibility* would constitute a breach of fiduciary duty involving personal misconduct.'" *Id.* at 927 (*quoting* S.Rep. No. 91-184 at 16 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4931 (emphasis added); *see also* H.R. Rep. No. 96-1341, *reprinted in* 1980 U.S.C.C.A.N. 4800, 4808 ("The Committee believes that the type of misconduct covered by [§ 36(a) ] ... extends to personal misconduct evidenced by misfeasance or nonfeasance in carrying out legal responsibilities *as well as self-dealing* and other examples of unjust enrichment." (emphasis added); *In re Nuveen Fund Litig.*, 1996 WL 328006, at *12 (N.D. Ill. June 11, 1996) ("[n]onfeasance of a duty or abdication of responsibility would constitute a breach of fiduciary duty involving personal misconduct" in proper cases). Accordingly, by pleading nonfeasance and malfeasance on the part of the Defendants in failing to maximize the investors' financial return and by failing to ensure participation in securities class actions, Plaintiff has properly pled a claim under section 36(a) of the ICA and Defendants' motions to dismiss should be denied.[10]

### 3.     Plaintiff has sufficiently plead a claim under ICA § 36(b)

ICA Section 36(b) provides a federal remedy for breaches of fiduciary duty by Fund advisors and their affiliates. While there must be some relationship between the fees paid to the Fund, Defendants, and the wrongful conduct alleged, the focus of Plaintiff's allegations need not be entirely on fees. For example, courts have "permitted challenged under section 36(b) for breaches of fiduciary duty as long as they result in or pertain to excessive fees." *Rohrbaugh v. Inv. Co. Inst.*, 2002 U.S. Dist. LEXIS 13401, *32 (D.D.C. July 2, 2002); *see also Galfand v. Chestnutt Corp.*, 545 F.2d 807, 811-12 (2d Cir. 1976)(permitting a §36(b) claim against an investment adviser who withheld information regarding his proposed contract for management fees).

Plaintiff has alleged that as a result of their systematic breaches of fiduciary duty, Defendants are not entitled to any compensation from Plaintiff and the Class. Compl. at ¶¶ 1, 33, 48. *Krantz v. Prudential Invs. Fund Mgmt. L.L.C.*, 77 F.Supp.2d 559, 565 (D.N.J. 1999)(held that "receipt of

---

[10]     The Fifth Third Defendants' arguments related to the Business Judgment Rule are irrelevant since this case has been brought directly rather than as a derivative. Moreover, the factual issues raised by the Fifth Third Defendants as to whether the advisor defendants have *sole* responsibility for ensuring participation in securities class action settlements is a factual dispute not properly raised in a Motion to Dismiss.

compensation while breaching a fiduciary duty violates Section 36(b), 15 U.S.C. § 80a-35(b)."); *Letsos v. Century 21-New West Realty*, 675 N.E.2d 217 (Ill. App. 1996); *Royal Carbo Corp. v. Flameguard, Inc. et al.*, 229 A.D.2d 430 (N.Y. App. Div. 1996) ("it is well settled that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally not entitled to recover compensation, whether commissions or salary."); RESTATEMENT (SECOND) OF AGENCY § 469 (1958) ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty or loyalty; if such conduct constitutes a willful and deliberate breach of his contract of services, he is not entitled to compensation even for properly performed services for which no compensation is apportioned"). As such, Plaintiff has alleged that *any and all* compensation Defendants received for their services to fund shareholders is excessive.

Defendants' argument that Plaintiff has failed to plead with sufficient specificity his claims with respect to the connection between their breaches of fiduciary duty and excessive compensation implies a heightened pleading standard that does not apply to ICA claims. To sufficiently plead ICA claims, Plaintiff must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2); *Migdal v. Rowe-Price Fleming Int'l*, 248 F.3d 321, 325-25 (4th Cir. 2001). Plaintiff need only provide a "factual basis for believing that a legal violation has actually occurred." *Migdal* at 328. "It is unnecessary for the plaintiff to set forth evidentiary details to support this allegation," or to plead evidentiary support for each element of the claim which must be established at trial. *Pfeiffer v. Bjurman, Barry & Assocs.*, 2004 U.S. Dist. LEXIS 16924, *15 (S.D.N.Y. Aug. 26, 2004) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

Plaintiff has established the sufficient nexus between Defendants' actions, or lack thereof, and the excessive fees they have received from Plaintiff and other putative Class Members as a result. Accordingly, Plaintiff has adequately plead a claim under §36(b).

### 4.    ICA § 47(b) provides a remedy for violations of other ICA sections

As Defendants recognize, ICA section 47(b) provides a remedy rather than a distinct cause of action or basis for liability. *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 813–14 (2d Cir. 1976). The section provides an equitable remedy upon a showing of a violation of other sections

17

of the ICA, stating: "[a] contract that is made, or whose performance involves, a violation of this subchapter ... is unenforceable by either party. 15 U.S.C. § 80a-46(b). Therefore, Plaintiff does not need to show independent standing to pursue a claim under section 47(b). Instead, Plaintiff's Complaint seeks the relief provided by 47(b) (rescission of the contract and forfeiture of fee) as an equitable remedy for Defendants' violation of sections 36(a) and 36(b) of the ICA. Complaint ¶¶ 46-48.

### D.    FIFTH THIRD BANCORP SHOULD NOT BE DISMISSED

Fifth Third Defendants concede that liability may be appropriate for a parent company under a "controlled person" theory. As a parent company, obviously connected to the remaining Defendants' activities, Fifth Third Bancorp may very well be responsible for the ultimate conduct of its advisors, trustees, and affiliates. This is not, however, an issue for a motion on the pleadings. Motions to dismiss are not judged not based on the sufficiency of facts but with all well-plead facts as true, drawing conclusions in favor of the Plaintiff. The issue of whether Fifth Third Bancorp is responsible should determined either at trial or the Summary Judgment stage.

### CONCLUSION

Plaintiff has standing to file the claims contained in his complaint, and has plead them sufficiently. Accordingly, the Fifth Third Defendants' Motion to Dismiss should be denied.

Dated: May 10, 2005

Respectfully submitted,

By:    /s/ David P. Meyer
        David P. Meyer (0065205)

18

Randall K. Pulliam
BARON & BUDD, P.C.
3102 Oak Lawn Ave.
Suite 1100
Dallas, Texas 75219-4281
(214) 521-3605
(214) 520-1181 fax

Hank Bates
J. Allen Carney
CAULEY BOWMAN CARNEY & WILLIAMS
11311 Arcade Dr., Suite 200
Little Rock, Arkansas 72212
(501) 312-8500
(501) 312-8505 fax

**Certificate of Service**

I certify that on May 10, 2005, I electronically filed the foregoing Memorandum in Opposition to Defendants' motion to dismiss, with exhibits, with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to counsel of record.

/s/ David P. Meyer_____
David P. Meyer (0065205)