# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN HAYES**, *et al.* | ) | **Case No. 1:05 CV 028** |
| | ) | |
| **Plaintiffs,** | ) | **(Judge Watson)** |
| | ) | **(Magistrate Judge Black)** |
| **-v-** | ) | |
| | ) | |
| **DAVID J. DURHAM**, *et al.* | ) | **DEFENDANTS, FIFTH THIRD** |
| | ) | **BANCORP AND FIFTH THIRD** |
| **Defendants.** | ) | **ASSET MANAGEMENT'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION TO DISMISS** |
| | ) | |
| | ) | |

Defendants, Fifth Third Bancorp and Fifth Third Asset Management (collectively the "Fifth Third Defendants"), hereby offer this Reply Memorandum in support of their previously filed Motion to Dismiss the Complaint filed against them by Plaintiff, John Hayes ("Plaintiff").

## I.    ARGUMENT

### A.    Plaintiff Lacks Standing To Bring Claims Relating To Funds In Which He Holds No Interest.

#### 1.    Plaintiff Cannot Satisfy the Requirements of Article III Standing

In his Memorandum In Opposition to the Fifth Third Defendants' Motion to Dismiss ("Memo. in Opp."), Plaintiff argues that the Fifth Third Defendants' "entire argument regarding standing is based upon the incorrect premise that Plaintiff has, or should have, brought this matter as a derivative suit." (Memo. in Opp. at 3). According to Plaintiff, "[e]very case cited, and all analysis and argument proffered, is based upon this faulty predicate." (*Id.*). While Plaintiff's failure to bring this lawsuit as a derivative action is equally as fatal as his lack of standing, it is absolutely clear that the two fatal flaws are completely independent grounds upon

which this Court should dismiss Plaintiff's Complaint.  The Fifth Third Defendants' argument that Plaintiff lacks standing to bring this lawsuit is not based on the predicate, "faulty" or otherwise, that Plaintiff has, or should have, brought this suit as a derivative action.  Instead, the Fifth Third Defendants' argument that Plaintiff lacks standing to bring this lawsuit is based upon the premise that because Plaintiff only owned shares in one of the mutual funds within the Fifth Third Family of Funds, he has no standing to bring claims related to the other mutual funds in which he never owned an interest.

To satisfy the Article III standing requirement, "at an irreducible minimum," a plaintiff must demonstrate that: (1) he suffered an injury personal to himself (*i.e.* an "injury-in-fact") that is (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In order to satisfy the "injury-in-fact" requirement, a plaintiff "must allege an injury to himself that is distinct and palpable, as opposed to merely abstract," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), and show that the injury affected him "in a personal and individual way." *Lujan*, 504 U.S. at 561, n. 1.  In other words, the plaintiff must have a personal stake in the matter to be adjudicated.  *Id.*  Strict adherence to these standing requirements is particularly important in the area of securities litigation, "in order to curb the risks of vexatious litigation and abuse of discovery." *In re Bank of Boston Corp. Secs. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991).

Other than in regards to the one mutual fund in which Plaintiff purportedly owned an interest ("Plaintiff's Mutual Fund"),[1] Plaintiff has not pleaded, nor can he demonstrate, that he

---

[1]     In his Memorandum in Opposition, states that he owned shares in the Fifth Third Balanced Fund and Micro Cap Value Fund.  (Memo. in Opp. at 4).  This new revelation is not supported by the Complaint or any other document that may be considered on a motion to dismiss. *See Clarkco Landfill Co. v. Clark County Solid Waste Management District*, F.Supp.2d 627, 633 (S.D. Ohio 1999) (disregarding unsupported factual assertions in legal

has suffered an "injury-in-fact" which is "distinct and palpable" or which has affected him in a "personal and individual way." Any damages that other mutual funds within the Fifth Third Family of Funds may have suffered is not an injury in which Plaintiff would have a personal stake. He owned no shares in these mutual funds and, therefore, could not have suffered any injury. Thus, he has no standing to bring this lawsuit on behalf of the shareholders in the other mutual funds. *See*, *e.g.*, *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (held that a plaintiff who purchased shares in two of a firm's mutual funds did not have standing to assert claims against the firm's other mutual funds, even if the plaintiff sought class certification for all investors based on the firm's actions with regard to all its funds, where plaintiff did not have an ownership interest in all the funds).

Neither has Plaintiff sufficiently pleaded that his "injury" is "fairly traceable" to the Fifth Third Defendants' alleged failure to participate in the securities class action settlements. As Plaintiff's Complaint states, the Fifth Third Family of Funds has issued shares to the public in multiple series, each of which is commonly referred to as a "mutual fund," and each of which holds a different portfolio of securities, bonds, cash, and/or other assets corresponding to a particular investment objective. (Complaint at ¶¶ 3, 23). As further stated by Plaintiff's Complaint, some of the mutual funds within the Fifth Third Family of Funds do not hold any equity securities at all, and instead invest solely in government bonds, corporate debt, cash, and/or other assets. (*Id.* at ¶ 23). Notably, however, Plaintiff alleges in his Complaint that he only owned "one of the Funds" during the alleged class period. Nowhere in his Complaint does

---

memoranda). Plaintiff's citation to *Pegram v. Herdich*, 530 U.S. 211 (2000) for the proposition that he may "add allegations by brief" is inaccurate. (Memo. in Opp. at 3). *Pegram* merely held that the meaning of allegations in a complaint may be clarified by a legal brief. *Id.* at 230, n. 10. *Pegram* does not hold that completely new (and in this case contradictory) facts may be added in this manner.

he state which Fifth Third mutual fund he owned, or when he made his investment.[2]   If Plaintiff's Mutual Fund did not own any securities, or own any securities that were the subject of the alleged class action settlements, then it would not have been entitled to any proceeds from such settlements, and neither Plaintiff's Mutual Fund's assets, nor the net asset value per share, would have increased.   As such, Plaintiff would not have suffered any injury that is "fairly traceable" to the Fifth Third Defendants' alleged failure to participate in the securities class action settlements.   Hence, Plaintiff's claims must be dismissed.

> **2.     The Investment Company Act Does Not Give Plaintiff Standing to Bring Claims Relating to Funds in Which He Has No Ownership Interest.**

Recognizing his standing dilemma, Plaintiff attempts to argue that the Investment Company Act ("ICA") provides him with standing to bring his claims.   According to Plaintiff, "[m]utual funds are not legal entities, are not organized in any corporate form, and are not required to register under the [ICA] or either of the Securities Acts."   (Memo. in Opp. at 4). Investment companies, on the other hand, "are legal entities, are organized under state law, and are registered with the SEC."   (*Id.*).   Plaintiff claims that the ICA recognizes this "important distinction between mutual funds and investment companies" and that it "expressly grants standing to shareholders of registered investment companies, not mutual funds."   (*Id.*).   Plaintiff then concludes that because he has invested in a fund within a series of funds, issued by the investment company Fifth Third Funds Trust, and every fund in the Fifth Third Family of Funds is part of the Fifth Third Funds Trust, he "has individual standing to pursue claims involving all of the funds within the Fifth Third family of mutual fund offerings."   (*Id.* at 4-5).   Not surprisingly, Plaintiff does not cite to any caselaw to support his ultimate conclusion.

---

[2]        In his Memorandum in Opposition, Plaintiff does state that he owned two Fifth Third Funds – the Fifth Third Balance Fund and the Micro Cap Fund.  (Memo. in Opp. at 4).  As discussed in Note 1, *supra*, this statement in the Memorandum in Opposition should be disregarded by the Court.

There are significant problems with Plaintiff's argument. First, Plaintiff has sued the Fifth Third Family of Funds' Trustees, Fifth Third Asset Management as the Fifth Third Family of Funds' investment advisor, and Fifth Third Bancorp as the parent company of Fifth Third Asset Management. Fifth Third Funds Trust, however, is not a named Defendant in this action. Fifth Third Funds Trust is never even mentioned in the Complaint. Thus, if Plaintiff claims to be suing the "investment company," Fifth Third Funds Trust, he must name that entity in his Complaint.

Second, even if Plaintiff is correct in arguing that he can bring suit against Fifth Third Funds Trust, as an "investment company" under the ICA (and assuming that this entity was actually a named defendant in this action), he cites to absolutely no authority to support his conclusion that he has individual standing to pursue claims involving all of the mutual funds organized under the Fifth Third Funds Trust. The provisions of the ICA do not dispense with the constitutional standing requirements. Indeed, courts have uniformly dismissed actions for lack of standing when mutual fund shareholders assert claims relating to mutual funds in which they have not invested. *See, e.g., Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735-738 (3d Cir. 1970) (dismissing plaintiff's derivative claims against mutual funds in which he did not own shares); *Werfel v. Kramarsky*, 61 F.R.D. 674, 679 (S.D.N.Y. 1974) ("one who does not own shares in a corporation at the time a suit is filed is not qualified to bring a derivative action on its behalf"); *Herman v. Steadman*, 50 F.R.D. 488, 489-490 (S.D.N.Y. 1970) (rejecting shareholder's attempt to pursue ICA claims on behalf of three mutual funds because he owned an interest in only one of them); *Williams v. Bank One Corp.*, 2003 WL 22964376 (N.D. Ill. 2003) (rejecting shareholder's attempt to bring a derivative claim not only on behalf of mutual funds in which he

owned shares, but also against all funds within One Group Family of Funds).  Accordingly, Plaintiff's argument that ICA confers standing upon him to bring his claims is erroneous.

### 3.    The Fifth Third Defendant's Standing Argument is not Premature Prior to a Motion For Class Certification.

Plaintiff argues that the Fifth Third Defendants' standing argument is premature because "once individual standing has been established…the analysis for the purposes of the Motion to Dismiss is concluded."  (Memo. in Opp. at 5).  It is clear, however, that the named plaintiff in a purported class action must meet all of the same jurisdictional requirements, including the standing requirement, as he would if he was bringing an individual suit asserting the same claims.  In other words, an actual "case or controversy" must exist between the named plaintiff and the defendants.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").  Indeed, when no named class representative has standing at the time a suit is brought, district courts are required to dismiss the suit for lack of jurisdiction, notwithstanding the class allegations.  *See, e.g., Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (held that when sole named plaintiff lacked constitutional standing from the beginning of the case, court was required to dismiss case rather than name another class representative).

Moreover, in no way are the Fifth Third Defendants "improperly attempting to incorporate class certification issues into the motion to dismiss."  (Memo. in Opp. at 6).  The fact is, the Article III standing requirement is a necessary prerequisite to any class certification analysis because without standing, the Court lacks power to hear this suit.  The constitutional standing requirement, therefore, must be met ***before*** a court considers any class certification issues.  *See, e.g., Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (Article III

standing requirement is inherent prerequisite to class certification inquiry that must be decided first because standing determines the court's power to hear the suit); *LaDuke v. Auslander*, 244 F.3d 807. 810-811 (9th Cir. 1985) (standing of named plaintiff "is a jurisdictional element that must be satisfied prior to class certification").

### B. Plaintiff's Claims Cannot Be Brought As A Direct Action.

In his Memorandum in Opposition, Plaintiff mischaracterizes Massachusetts law in order to avoid having to bring this case as a derivative action. Plaintiff argues that a shareholder may maintain a direct action for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong, if the shareholder can show that the wrongdoer owed him a special duty, or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders, or the corporation itself. (Memo. In Opp. at 8).

Under Massachusetts law, "[t]o bring a direct action, a plaintiff must allege an injury distinct from that suffered by shareholders generally." *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (citing *Sarin v. Ochsner*, 721 N.E.2d 932, 934 (Mass. Ct. App. 2000)). In addition, "if a plaintiff alleges the mismanagement of funds, embezzlement or ***breach of fiduciary duty*** resulting in the diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor." *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21, 26 (D. Mass. 1996) (emphasis added); *see also Hurley v. Federal Deposit Ins. Co.*, 719 F.Supp. 27, 30 (D. Mass. 1989) (applying Massachusetts law, the court stated that "corporate mismanagement…resulting in lower stock prices cannot form the basis for an individual shareholder lawsuit against the wrongdoer").

Plaintiff's claims cannot be brought as a direct action because he has failed to allege an injury that is distinct from any injury that others shareholders would have generally suffered. Plaintiff alleges an injury to the "Fifth Third Family of Funds," rather than an injury that would be distinct to himself.  It is undisputed that any proceeds from the securities class action settlements would have benefited "the Funds."  Plaintiff concedes this point, alleging that if the Fifth Third Defendants had submitted the proof of claims they allegedly neglected to file, "the settlement funds would have increased the total assets held by the Funds," thereby increasing "the Funds'" net asset values.  (Complaint at ¶ 25).  Any benefit Plaintiff would have derived from an increase in assets of the mutual fund in which he owned shares, would have been proportionately identical to the benefit enjoyed by all the investors in the same mutual fund. Such claims are clearly not distinct from those of what another shareholder would have generally.  Therefore, such claims are quintessentially derivative.[3]

### C.     Plaintiff Has Not Properly Asserted Claims Under The ICA.

#### 1.     There is No Implied Private Right of Action Under § 36(a) of the ICA.

Despite recent U.S. Supreme Court and Court of Appeals precedent to the contrary, Plaintiff asks this Court to imply a private right of action under § 36(a) of the ICA.  Plaintiff has two bases for his request.  First, citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002), Plaintiff argues that a federal statute creates a private right of action if its language is phrased in terms of the person benefited.  (Memo. in Opp. at 12).  According to Plaintiff, because the policy

---

[3]     Because Plaintiff's claims must be brought derivatively, Plaintiff must comply with Rule 23.1 of the Federal Rules of Civil Procedure, which requires a plaintiff bringing such claims to either: (1) make a demand on the directors of the entity on whose behalf the plaintiff wishes to proceed (in this case the Funds); or (2) plead with particularity the reasons why demand should be excused under the applicable state law.  FED. R. CIV. P. 23.1.

Here, Plaintiff has not alleged that he made a demand on Funds, nor has he pleaded why such demand should be excused.  In his Memorandum in Opposition, Plaintiff states that Rule 23.1 is inapplicable because this case has been brought as a direct, not a derivative action.  (Memo. in Opp. at 12).  As demonstrated above, and in the Fifth Third Defendant's Motion to Dismiss, Plaintiff's claims are quite clearly derivative in nature and his failure to plead demand, or demand futility, requires this Court to dismiss his claims.

declaration in § 1 of the ICA "specifically addresses the plight of investors," Congress intended to create a private right of action under § 36(a).  (*Id.*).  Second, Plaintiff argues that the legislative history and legal context surrounding § 36(a) supports the notion that Congress intended that a private right of action be implied.  (*Id.* at 14).

### a.  Section 1 of the ICA does not create a private right of action under § 36(a).

Plaintiff's argument that the policy declaration in § 1 of the ICA creates a private right of action under § 36(a) is illogical and not supported by the caselaw.  Certainly, the policy declaration contained in § 1 of the ICA states that the purpose of the ICA is to "eliminate the conditions which adversely affect the national public interest and the interest of investors."  15 U.S.C. § 80a-1.  To read this provision so as to create private right of action for § 36(a), however, would require the courts to imply a private right of action for *every* section of ICA. Clearly, this could not have been Congress's intent.  Otherwise, they would not have specifically provided for a private right of action in § 36(b), but failed to provide for them in other sections:

> "The express provision of one method of enforcing a substantive rule suggests that Congress intended to precluded others…. Sometimes the suggestion is so strong that is precludes a finding of congressional intent to create a private right of action, even though other aspects of the statute…suggest the contrary."

*Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).  *See also Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 433 (2d Cir. 2002) ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other was intentional.").  Giving such a broad interpretation to § 1, so as to create a private right of action for every section of the ICA, would be completely inconsistent with the text and structure of the entire ICA statutory scheme.  *See Sandoval*, 532 U.S. at 288 (holding

that the search for Congressional intent regarding implied private rights of action begins and ends with the text and structure of the statute).

Moreover, while Plaintiff correctly notes that numerous courts interpreting the ICA have recognized implied private rights of action to enforce many of its sections, including § 36(a), Plaintiff fails to understand that when these cases were decided, "courts had more latitude to weigh statutory policy and other considerations than they do now." *Olmsted*, 283 F.3d at 434. Previously, "courts generally recognized an implied private right of action in any federal statute 'enacted for the benefit of a special class.'" *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 374 (1982). After the U.S. Supreme Court's decision in *Sandoval*, however, past decisions like the cases cited by Plaintiff, "reflecting a judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action, however, belong to an '*ancient regime*'" and are no longer accorded any precedential value. *Olmsted*, 283 F.3d at 434 (citing *Sandoval*, 532 U.S. at 287).

> **b.** **Legislative history and legal context are not considerations for determining whether a private right of action exists under a federal statute.**

Plaintiff's argument that the legislative history of the ICA supports a congressional intent to imply a private right of action under § 36(a) is equally unavailing. In support of this position, Plaintiff cites the Supreme Court's decision in *Sandoval* as standing for the proposition that this Court should consider not only the text and structure of the ICA, but also the legislative history. (*See* Memo. in Opp. at 12 ("[i]n determining whether to imply a private right of action, this court must look to the statutory language, congressional intent and the statute's legislative history")). To the contrary, the Supreme Court in *Sandoval* specifically stated that "[w]e...begin (and find that we can end) our search for Congress's intent with the text and structure of [the statute]."

*Sandoval*, 532 U.S. at 288; *see also Olmsted*, 283 F.3d at 435 ("[w]here the text of a statute is unambiguous judicial inquiry is complete"). The *Sandoval* court further stated that it has never given substantial consideration to legislative history or legal context at the expense of the statutory text itself. "We have never accorded dispositive weight to context shorn of text. In determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text." *Sandoval*, 532 U.S. at 288 (internal citation omitted).

The Supreme Court has similarly rejected Plaintiff's argument that amendments to the ICA and their legislative history, in effect, "ratified" earlier court decisions finding private rights of action under the ICA. Citing a 1987 Third Circuit opinion interpreting a 1980 House Committee Report, Plaintiff argues that such "Committee Report expressly approves the position of those courts which, following the 1970 amendments, held that private causes of action should be implied from the Investment Company Act." (*See* Memo. in Opp. at 14 (quoting *Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings, Inc.*, 825 F.2d 731 (3d Cir. 1987)). When confronted with a similar type argument in *Sandoval*, the Supreme Court stated that "as a general matter…the argument deserves little weight in the interpretive process" because "it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation." *Sandoval*, 532 U.S. at 292; *see also Olmsted*, 283 F.3d at 435 (holding that the 1980 House Committee Report regarding implied private rights of action under the ICA was not enough to overcome the strong presumption arising from the clear language of a statute, which did not provide for private causes of action).

Finally, Plaintiff argues that the Fifth Third Defendants' reliance on *Olmsted* and *Chamberlain v. Aberdeen Asset Management Ltd.*, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005)[4] is in effect asking this Court "to ignore…congressional sentiments and to abandon…decades of jurisprudence." (Memo. in Opp. at 15). In an attempt to distinguish *Olmsted*, Plaintiff states that the Second Circuit was addressing whether private rights of action existed under §§ 26(f) and 27(i) of the ICA, neither of which is at issue in this case. (*Id.*). According to Plaintiff, in a case "decided contemporaneously" with *Olmsted*, *Strougo v. Bassini*, 282 F.3d 162 (2d. Cir. 2002), the Second Circuit "did directly address [§] 36(a)" and held that that there was a implied private right of action under that section. (*Id.*).

Plaintiff's characterization of *Olmsted* and *Strougo*, however, is inaccurate. *Strougo* was not decided "contemporaneously" with *Olmsted*. *Strougo* was decided a week earlier and, thus, "the *Olmsted* opinion is the Second Circuit's more recent ruling on the issue." *Chamberlain*, 2005 WL 195520, at *4. Additionally, it is important to note that the *Olmsted* opinion lists the district court's opinion in *Strougo* (holding that there was an implied private right of action under § 36(a)) as one of the cases representing the "ancient regime." *Olmsted*, 283 F.3d at 434, n. 4. The fact remains, there is no difference in the analysis as to whether a private right of action exists under §§ 26(f) and 27(i) of the ICA and whether one exists § 36(a). *See Chamberlain*, 2005 WL 195520 at *2; *Olmsted*, 283 F.3d at 432-435. Accordingly, Plaintiff's § 36(a) claim must be dismissed.

---

[4]     On April 6, 2005, the *Chamberlain* court vacated its opinion upon the joint motion of the parties. In vacating the opinion, however, the court expressly stated it "did not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion was granted simply in order to permit the parties to proceed to settlement." *Chamberlain v. Aberdeen Asset Management, Ltd.*, No. 02-CV-5870, at 1 (SJ) (E.D.N.Y. filed April 12, 2005) (available on PACER).

### 2. Plaintiff Has Failed to Sufficiently Plead a Claim Under § 36(b) of the ICA.

Plaintiff's argument that he has sufficiently pleaded a viable claim under § 36(b) is not supported by the statutory text or caselaw. The gist of Plaintiff's argument is that while there must be some relationship between the fees paid to investment advisors and the wrongful conduct alleged, the focus of a plaintiff's allegations need not be entirely on fees. (Memo. in Opp. at 16). Notably, when confronted with almost an identical argument, the Fourth Circuit specifically rejected it:

> Plaintiffs contend…that Section 36(b)'s private right of action is not limited solely to claims for excessive compensation.… Plaintiffs' position, however, is not supported by either the statutory text or the caselaw. Section 36(b) imposes on an investment adviser a fiduciary duty with respect to the receipt of compensation for services. And Section 36(b) grants individual investors a private right of action only for breach of fiduciary duty in respect of such compensation. As such statutory text indicates, Section 36(b) is sharply focused on the question of whether the fees themselves were excessive….

*Midgal v. Rowe Price-Fleming International, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001).

In support of his argument that that he only has to allege that "any and all compensation" that the Fifth Third Defendants received for their services was excessive, Plaintiff cites to only one case that even deals with § 36(b) of the ICA – *Krantz v. Prudential Investments Fund Management, LLC*, 77 F.Supp.2d 559 (D. N.J. 1999). The other authorities which Plaintiff cites are state court cases and the Restatement (Second) of Agency which deal with state common law agency principles.

Even *Krantz* fails to support Plaintiff's argument. In that case, the court stated, in *dicta*, that the "receipt of compensation while breaching a fiduciary duty violates Section 36(b)." *Id.* at 565. Yet, the court went on to **hold** that the complaint in that case had to be dismissed because

the plaintiff failed to make allegations about how the fees were excessive or about the services that the defendant rendered:

> As pleaded, the Amended Complaint fails to allege how the fees were excessive…. It simply characterizes all the fees as 'excessive,' without pleading any facts that, if true, would demonstrate that the fee is so disproportionately large that it bears no reasonable relationship to the services rendered.

*Id.* (internal quotations omitted). In other words, every authority that Plaintiff cites fails to support the arguments that he makes.

Like the plaintiff in *Krantz,* Plaintiff fails to make any allegations about the services that the Fifth Third Defendants rendered or how any fees were excessive. Instead, Plaintiff simply characterizes all the fees as "excessive," without pleading any facts that, if true, would demonstrate the Fifth Third Defendants' liability under § 36(b). Accordingly, Plaintiff's § 36(b) claim must be dismissed.

### D. Plaintiff's Claim Under § 47(b) Must Be Dismissed.

Plaintiff's claim under § 47(b) of the ICA must be dismissed because: (1) Plaintiff was not a party to any of the alleged agreements between any of the Defendants and the Funds; and (2) § 47(b) establishes an equitable remedy, not a separate cause of action.

Section 47(b) of the ICA states: "A contract that is made, or whose performance involves, a violation of this subchapter…is unenforceable ***by either party***…." 15 U.S.C. § 80a-46 (emphasis added). In *Lessler v. Little*, the First Circuit dismissed a plaintiff's claim seeking to void an investment company sales contract under § 47(b) because the plaintiff was not a party to the contract. 857 F.2d 866, 874 (1st Cir. 1988). "[Plaintiff] appears to have overlooked the plain language of the very statutory section he invokes. Section 47(b)(1) declares that contracts entered into in violation of the other provisions of the Investment Company Act are 'unenforceable ***by either party***.'" *Id.* (emphasis in original). According to the First Circuit,

because the plaintiff "was not a party to the [investment company sales] contract, [and his] complaint [did not] assert a derivative action on behalf of the [investment company], which [was] a party…[the plaintiff] lacked standing to pursue his own claims properly belonging to the corporation [under § 47(b)]." *Id.* Similarly, like the plaintiff in *Lessler*, Plaintiff is not a party to any alleged agreements between any Defendants and the Fifth Third mutual funds. Thus, Plaintiff's § 47(b) claim must be dismissed.

Additionally, Plaintiff's § 47(b) claim fails because that section establishes an equitable remedy regarding contract enforcement, not a cause of action. To the extent Plaintiff can establish the impropriety of an advisory fee contract under another section of the ICA, § 47(b) creates an equitable remedy that the Court may consider. *See Tarlov v. Paine Webber Cash Fund, Inc.*, 559 F.Supp. 429, 438 (D. Conn. 1983) ("plaintiff can seek relief under section 47 only be showing a violation of some other section of the Act"); *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 813-814 (2d Cir. 1976) (invoking equitable remedy of § 47(b) only after finding defendant violated § 20(a) of the ICA). As such, the equitable remedy of § 47(b) may be sought only if a contract covered by the ICA was illegally entered into, or the performance of the contract necessarily requires a violation of the ICA.

Here, Plaintiff does not allege that there is anything improper about the advisory fee contract, but alleges merely that all of the Defendants acted improperly in carrying out their fiduciary duties under §§ 36(a) and 36(b).[5] Plaintiff has not alleged that the advisory fee contract was made in violation of the ICA, or necessarily entailed or even caused a violation of the ICA. Accordingly, § 47(b) is not applicable and Count V must be dismissed.

---

[5]    It is important to note that a violation of § 36(a) or 36(b) has never been used as a successful basis for a remedy under § 47(b). *See* H. Norman Knickle, The Investment Company Act of 1940: SEC Enforcement and Private Actions, 23 Ann. Rev. Banking & Fin. L., 777, 847 n. 461 (2004) (§ 47(b) violation of the ICA may successfully be invoked where a plaintiff demonstrates violation under §§ 13, 15(c), 17, 20, 26, or 27 of the ICA).

**E.      Plaintiff Has Failed To Plead Any Facts That Would Establish Any Liability Of Fifth Third Bancorp.**

Even if this Court finds that some, or all, of Plaintiff's claims survive the Fifth Third Defendants' Motion to Dismiss, Fifth Third Bancorp should be dismissed as a party to this action. The fact is, Plaintiff has failed to make any allegations that, if true, could possibly establish any liability of Fifth Third Bancorp. Plaintiff says nothing about Fifth Third Bancorp in his Complaint other than identifying it as "the ultimate parent of Fifth Third Asset Management, Inc." (Complaint at ¶ 11). In his Memorandum in Opposition, Plaintiff argues that "[a]s a parent company, obviously connected to the remaining Defendants' activities, Fifth Third Bancorp may very well be responsible for the ultimate conduct of its advisors, trustees, and affiliates." (Memo. in Opp. at 18). Plaintiff, however, must at the very least make such an allegation in his Complaint to survive a motion to dismiss. *See McEntee v. Henderson*, 154 F. Supp.2d 1286, 1288-89 (S.D. Ohio 2001) ("Rule 12(b)(6) motion to dismiss requires a court to determine whether a cognizable claim has been pleaded ***in the complaint***").

Additionally, there is not a set of circumstances under which Fifth Third Bancorp can be held liable under § 36(b) of the ICA. Pursuant to § 36(b), an "affiliated person" of investment advisors can be held liable for breaches of fiduciary duties committed by the investment advisors. In order to properly plead that Fifth Third Bancorp is an "affiliated person" of Fifth Third Asset Management, however, Plaintiff "must put forward facts in support of the elements establishing an 'affiliated' relationship." *Rohrbaugh v. Investment Company Institute*, 2002 WL 31100821, *4 (D.D.C. July 2, 2002). The ICA defines an "affiliated person" as, *inter alia*: "any person directly or indirectly controlling, controlled by, or under common control with, such other person…." 15 U.S.C. § 80(a)-2(a)(3)(C). The term "control," in turn, is defined under the ICA as "the power to exercise controlling influence over the management or policies of a company,

unless such power is solely the result of an official position with such company." *Id.* at § 80a-2(a)(9). Thus, under the plain language of the ICA, Plaintiff is required to plead facts showing that Fifth Third Asset Management is somehow "controlled by" Fifth Third Bancorp. Furthermore, § 36(b), subsection (3), limits liability to "recipients of…compensation." Thus, if a "complaint does not allege which defendants received fees, and specifically does not mention any non-advisor defendant receiving fees from the funds," then such § 36(b) claims must be dismissed. *Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529, *5 (N.D. Cal. March 7, 2005).

Upon review of the Complaint, it is clear that it contains absolutely no allegations that Fifth Third Asset Management is "controlled by" Fifth Third Bancorp. While there is the vague allegation that Fifth Third Bancorp is "the ultimate parent of Fifth Third Asset Management," (*see* Complaint at ¶ 11), there are no allegations of how Fifth Third Bancorp "controlled" Fifth Third Asset Management through this parent/subsidiary relationship. *See Rohrbaugh*, 2002 WL 31100821, at **4-5 (in dismissing § 36(b) claims, the court held that vague allegations about the relationship between two entities does not necessarily mean that one entity is an "affiliated person" of the other; rather, plaintiff had to allege how one entity "controlled" the other). A review of Plaintiff's Complaint also reveals that Plaintiff did not allege which Defendants received fees, and specifically does not mention any non-advisor defendants receiving fees from the Funds. Accordingly, at the very least, this Court must dismiss the § 36(b) claim against Fifth Third Bancorp.

II.    **CONCLUSION**

For all of the foregoing reasons, and for the reasons articulated in the Motion to Dismiss, the Fifth Third Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety and enter judgment in the Fifth Third Defendants' favor.

Respectfully submitted,


/s/ Drew M. Hicks
Patrick F. Fischer (0039671)
Drew M. Hicks (0076481)
Keating, Muething & Klekamp, PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6459
Fax: (513) 579-6457
pfischer@kmklaw.com
dhicks@kmklaw.com
*Attorneys for Defendants,*
*Fifth Third Bancorp and*
*Fifth Third Asset Management*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MOTION TO DISMISS OF DEFENDANTS FIFTH THIRD BANCORP AND FIFTH THIRD ASSET MANAGEMENT was served upon counsel of record via the Court's ECF/CM system this 1st day of June, 2005.

/s/ Drew M. Hicks
Drew M. Hicks

1447656.1