UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN HAYES,<br><br>    Plaintiff,<br><br>  v.<br><br>DAVID J. DURHAM, et al.,<br><br>    Defendants. | Case No. 1:05CV028<br><br><br>Judge Watson<br>Magistrate Judge Black |

**TRUTSTEE DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

  Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey ("Trustee Defendants") submit this Reply Memorandum in further support of their Motion to Dismiss the Complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(6).

### Introduction

  Plaintiff asserts three claims against the Trustee Defendants: breach of fiduciary duty under state and federal law (Counts I and III) and negligence (Count II). These claims should be dismissed because Plaintiff (1) has improperly brought them in a direct action, (2) has not demonstrated he has standing, (3) has no private right of action under federal law, and (4) has not stated a claim under either federal or state law.

**I.  Plaintiff's Claims Are Derivative**

  Plaintiff argues that his claims are properly brought in a direct action because they are based on "an injury he suffered directly." Opp. 7. That argument is disproved by the allegations in the Complaint. According to Plaintiff, the Funds owned the securities involved in the class actions. Compl. ¶ 24. The Funds were eligible to participate in settlements of those class

actions. *Id.* The Funds should have received proceeds from those settlements. *Id.* ¶ 25. The Funds' assets were reduced because they did not. *Id.* The Funds' share prices were therefore lower than they should have been, thereby injuring Plaintiff. *Id.* ¶¶ 3, 25-26.

Plaintiff's claims are therefore indirect, flowing entirely from alleged injury to the Funds, and affecting Plaintiff only through an alleged reduction in the value of his shares. As such, his claims can only be brought derivatively. *See Gaff v. FDIC,* 814 F.2d 311, 315-17 (6th Cir. 1987) (Sixth Circuit has "conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of corporate shares"); *Pagounis v. Pendleton,* 753 N.E.2d 808, 812 (Mass. App. Ct. 2001) (where injury is in form of lower share values, claims are derivative).

Plaintiff argues that "numerous courts have found that an investor may bring a direct action, rather than a derivative suit, under the ICA." *See* Opposition ("Opp.") 7 & n.4. The cases he cites, however, mainly involve claims under **Section 36(b)** of the ICA, which, by statute, may be brought by shareholders directly without prior demand. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 533 (1984). That rule, unique in the statute, does not extend to the one claim Plaintiff has asserted under the ICA against the Trustee Defendants, under **Section 36(a)**.

Nor do the other cases Plaintiff cites involve claims like Plaintiff's. For example, in *Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002), the plaintiff challenged a rights offering by a closed-end mutual fund, in which each shareholder was offered an opportunity to purchase newly issued shares at a discount. *Id.* at 165-66.[1] The plaintiff claimed the offering penalized him for not participating, because his equity interest in the fund's assets – relative to other shareholders – was diminished. *Id.* at 166, 174-75. The court held (under Maryland law) that the plaintiff could

---

[1] Unlike an "open-end" mutual fund, a "closed-end" fund usually sells a fixed number of shares which trade in secondary markets. *See* 15 U.S.C. §§ 80a-5(a), 80a-23; *Strougo*, 282 F.3d at 165.

sue directly for damages, but only because his injuries "do *not* derive from a reduction in the value of the Fund's assets or any other injury to the Fund's business." *Id.* at 175 (emphasis in original).[2]  In fact, according to the court, "the acts that allegedly harmed the shareholders *increased* the Fund's assets." *Id.* (same). The same cannot be said in this case.[3]

Plaintiff also argues that mutual funds are "different." He claims that because gains and losses in asset values are "immediately passed on" to shareholders, he may sue directly for any wrongs affecting his investment. Opp. 9. This argument was squarely rejected in *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 733 (3d Cir. 1970). According to the Third Circuit, granting mutual fund shareholders such rights "fails to properly appreciate, or seeks to ignore, the fundamental tenet of corporation law which treats the corporate body as an entity – indeed as a person – separate and distinct from those who own shares of its stock. It is this concept of separate identities . . . that reserves for the corporation the right to vindicate wrongs which harm the corporation, injuring the shareholders only in the sense that stock values are imperiled. That the worth of a share of . . . stock is directly proportionate to the value of a mutual fund's net assets is insufficient to destroy these separate identities." *Id.*[4]

---

[2] The court in *Strougo* also dismissed claims based on an alleged reduction in share values, because they concerned "precisely the type of injury" that could only be redressed through derivative action. 282 F.3d at 174.

[3] *In re ML Lee Acquisition Fund II, L.P.,* 848 F. Supp. 527 (D. Del. 1994), is also distinguishable. There, the mutual funds were organized as partnerships, and plaintiffs' claims were based on breach of the partnership agreements and fraud in the inducement. *Id.* at 536-37, 562. *Seidel v. Lee,* 1994 U.S. Dist. LEXIS 21534 (D. Del. 1994), involved the same claims and facts. *See id.* at *8, *17-18.

[4] Plaintiff cites *Strigliabotti v. Franklin Resources, Inc.,* 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) to support his argument that mutual fund shareholders can always sue directly. Opp. 10. Yet *Strigliabotti* applied California law to assess whether the plaintiffs' claims were direct or derivative, which appears to differ from Massachusetts law. *Compare Jones v. H.F. Ahmanson,* 460 P.2d 464, 470-71 (Cal. 1969), *with Sarin v. Ochsner,* 721 N.E.2d 932, 934-35 (Mass. App. Ct. 2000). The plaintiffs in *Strigliabotti* also sought to recover alleged "excessive fees" paid to mutual fund advisers under ICA § 36(b) – which allows direct action – and their state law claims sought the same relief. 2005 WL 645529, at *8. To the extent the case suggests that mutual fund shareholders asserting other claims always a right to do so directly, it is inconsistent with *Kauffman,* 434 F.2d at 733, and contradicted by numerous cases holding that claims based on alleged indirect injury to shareholders must be brought derivatively. *See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 259-61 (S.D.N.Y. 2003); *Dreyfus Aggressive Growth Mut. Fund Litig.,* 2000 WL 10211, at *4 (S.D.N.Y 2000);

Plaintiff next argues that if the action is found to be derivative, the recovery he wins will not "as accurately nor as justly" compensate injured shareholders. Opp. 10. Plaintiff's counsel gets ahead of himself with this argument – the case is a long way from the award of any damages to anyone. At this point, it is sufficient to say that the question of how any alleged damages might be allocated has no bearing on whether Plaintiff's claims are direct or derivative.[5]

Finally, Plaintiff says he is not required to sue derivatively because the Trustee Defendants breached fiduciary duties owed to him directly. Opp. 11. Yet the authority he cites for this proposition, a law review article, says only that "directors and managers of mutual funds have the same fiduciary obligations to their shareholders as do directors and managers of other corporations." Cox & Thomas, 80 Wash. U.L.Q. 855, 863 (2004) (Opp. Ex. 1). As discussed in the Trustee Defendants' Opening brief, in Massachusetts "[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders." *Jernberg v. Mann,* 358 F.3d 131, 135 (1st Cir. 2004). Moreover, even if such duties were owed, Plaintiff still could not bring his claims directly. "As a general proposition, claims for breach of fiduciary duties on the part of corporate directors or officers are to be brought in derivative suits." *Carlson v. Rabkin,* 789 N.E.2d 1122, 1127 (Ohio Ct. App. 2003). That is "because the damage that results from the fraudulent or negligent management of the corporation is primarily to the corporation . . . and affects the stockholders or members only indirectly and all of them alike." *Id. See also Jackson v. Stuhlfire,* 547 N.E.2d 1146, 1148 (Mass. Ct. App. 1990) (Massachusetts law).

---

*Green v. Nuveen Adv. Corp.,* 186 F.R.D. 486, 489-90 (N.D. Ill 1999), *aff'd,* 295 F.3d 738 (7th Cir.), *cert. denied,* 537 U.S. 1088 (2002); *In re Nuveen Fund Litig.,* 855 F. Supp. 950, 954 (N.D. Ill. 1994); *Marcus v. Putnam,* 60 F.R.D. 441, 444 (D. Mass. 1973).

[5]  The issue Plaintiff raises is no different for a derivative claim brought on behalf of a mutual fund than it is for a derivative claim brought on behalf of any other corporation or business trust. Between the time the alleged wrong occurs, and the time a recovery is obtained, shareholders come, go, and change their positions. That fact does not convert claims that otherwise qualify as derivative into claims that may be brought directly. *See, e.g., In re J.P. Morgan Chase & Co.,* 2005 WL 1076069, at *7 (Del. Ch. April 29, 2005).

The same is true here.  Plaintiff has no right to bring his claims directly against the Trustee Defendants.  Those claims should be dismissed.

## II. Even If Class Action Claims Were Permissible, Plaintiff Has Not Demonstrated That He Has Standing To Assert Them

The Complaint in this case alleges only that Plaintiff "at all relevant times owned one of the Funds." Compl. ¶ 10.  Nowhere does he state *which* fund he owned, or *when* he made his investment.  Without that information, Plaintiff cannot show that his fund owned any securities that were involved in the class action settlements alleged in the Complaint, or that his fund would have been entitled to any proceeds from such settlements when he owned his shares.  Hence the Complaint does not show that plaintiff suffered any "injury" due to the alleged failure to participate in these settlements, or that recovering the amount of such settlements would "pass through" to him in terms of higher share values.

In his Opposition, Plaintiff says he owns shares in the Fifth Third Balanced Fund and Micro Cap Value Fund.  Opp. 4.  This unsupported statement, not based on the Complaint or any other document that may be considered on a motion to dismiss, should be ignored completely. *See Clarkco Landfill Co. v. Clark County Solid Waste Mgmt. Dist.*, 110 F. Supp. 2d 627, 633 (S.D. Ohio 1999) (disregarding unsupported factual assertions in legal memorandum).[6]

Even if this information were not ignored, it would still be insufficient to establish Plaintiff's standing.  Plaintiff states that he "is an investor" in these two funds, but does not state when he purchased his shares.  Opp. 4.  Yet none of the class action settlements identified in the Complaint has a class period that extends later than 2003, and the latest deadline to submit claims is August 2004.  Compl. ¶ 24.  Hence, Plaintiff's assertion that he "is an investor" in these

---

[6] Plaintiff cites *Pegram v. Herdrich,* 530 U.S. 211 (2000), for the proposition that he may "add allegations by brief." Opp. 3.  Yet *Pegram* holds merely that the *meaning* of allegations in a complaint may be *clarified* by a legal brief.  *Id.* at 230 & n.10. The case does not hold that factual allegations may be *introduced* through briefing.

funds does not establish that he owned shares in either when it might have been eligible to participate in these settlements, or received any proceeds from doing so. As such, that assertion does not show that Plaintiff was injured from the wrongs he alleges.

Finally, even if Plaintiff did have standing to pursue claims regarding any class action settlements his funds allegedly "missed," that right would not extend to any claims involving other Fifth Third funds. The case law cited in the Trustee Defendants' Opening Brief (at 11) makes this clear, and Plaintiff has no response, other than to delve into arguments that (at most) pertain to class certification. Opp. 5-7. *See also In re Eaton Vance Corp. Sec. Litig.,* 220 F.R.D. 162, 169-71 (D. Mass. 2003) (rejecting "juridical links" doctrine as basis for Article III standing). Plaintiff has not pleaded facts showing he has individual standing in this case, much less standing to sue regarding mutual funds he does not own. His claims should be dismissed.[7]

### III.  Plaintiff Has No Private Right Of Action Under Section 36(a) Of The ICA

Plaintiff argues that he should have a private right of action under Section 36(a) of the ICA because allowing him to sue would promote the purposes of the statute. Opp. 12. But that is exactly the approach the Supreme Court rejected in *Alexander v. Sandoval,* 532 U.S. 275, 287 (2001) (abandoning practice of implying private right "to make effective the congressional purpose expressed by a statute") (internal quotations omitted). It is also an approach that Chief Judge Rubin of this Court rejected in finding there was no private right of action under Section 7(a) of the ICA. According to Chief Judge Rubin, while the "express intention of the ICA [is] to protect the interests of shareholders . . . whether Congress intends protection of these interests to be enforced by private litigation, is a separate and distinct question." *M.J. Whitman & Co., Inc.*

---

[7] Plaintiff cites *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998), *see* Opp. 5-6, but that case involved claims under ERISA, and a common methodology that defendant admitted was used to determine benefits by the plaintiff's plan and others. *Id.* at 423. Neither is true here. In fact, considerations that apply to standing in ERISA cases have no place in securities litigation, where "strict standing requirements are particularly important . . . in order to curb the risks of vexatious litigation and abuse of discovery." *Eaton Vance,* 220 F.R.D. at 168.

*Pension Plan v. American Financial Enter., Inc.,* 552 F. Supp. 17, 19 (S.D. Ohio 1982), *aff'd on other grounds,* 725 F.2d 394 (6th Cir. 1984).

Plaintiff also says that, "[a]s a general matter, a statute creates a private right of action if its language is 'phrased in terms of the persons benefited.'" Opp. 12 (quoting *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002)). In *Gonzaga,* however, the Supreme Court did not hold that such phrasing was sufficient by itself to create a private right of action. 536 U.S. at 284. In fact, the Court held that even where a statute is phrased "with an unmistakable focus on the benefited class. . . . a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private *right* but also a private *remedy*." *Id.* (quoting *Sandoval*, 532 U.S. at 286) (emphasis by Court in *Gonzaga*).

Section 36(a) neither contains an unmistakable focus on investors, nor manifests any intent to create a private right of action. To the contrary, the focus of the text is on "the person[s] regulated," *Sandoval*, 532 U.S. at 289, and the remedy it creates is for "the Commission" – not investors – to bring action for injunctive and other relief. *See* 15 U.S.C. § 80a-35(a).[8] While the last sentence of Section 36(a) refers to investors, it does so in describing the remedies available in an SEC action. *Id.* Indeed, since the very next section of the statute expressly authorizes action "by the Commission, *or by a security holder*," *id.* § 80a-35(b) (emphasis added), there is no doubt Congress knew how to create a private remedy under the ICA, and did not do so under Section 36(a). *See Olmstead v. Pruco Life Ins. Co.,* 283 F.3d 429, 433 (2d Cir. 2002).

The Eastern District of New York reached exactly this conclusion in *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, 2005 WL 195520, at *3 (E.D.N.Y. Jan. 21, 2005), discussed in the Trustee Defendants' Opening Brief. Plaintiff has no response to the holding in *Chamberlain*, nor

---

[8] *Cf. Gonzaga,* 536 U.S. at 284 n.3 (language in civil rights statutes unmistakably focuses on benefited class: "no person . . . shall be subjected to discrimination" in housing, education and other activities).

does he even mention this Court's ruling in *M.J. Whitman,* in which Chief Judge Rubin applied the same analysis, and reached the same result, with respect to Section 7(a) of the ICA. 552 F. Supp. at 19-22. Plaintiff also ignores the other cases cited by the Trustee Defendants in their Opening Brief, reaching the same conclusion after *Sandoval* under other sections of the ICA.[9]

Instead, Plaintiff cites a raft of old cases which belong to an *"ancien regime"* and are no longer good law. Opp. 13 & n.8. *See Sandoval,* 532 U.S. at 287; *Olmsted,* 283 F.3d at 434. Plaintiff also cites a report issued by a congressional committee in 1980, which he says "supports a finding" that a private right of action is implied in Section 36(a). Opp. 14. However, that report accompanied a statute that did *not* amend Section 36(a), *see* Small Business Investment Incentive Act of 1980, Pub. L. No. 96-477, 94 Stat. 2275 (1980), and in fact *post-dated* both the adoption of Section 36(a) in 1940, and its most recent amendment in 1970. *See* 15 U.S.C.A. § 80a-35(a) (Historical and Statutory Notes – Amendments).[10] Hence that report is not instructive on the intent of Congress in adopting Section 36(a). *See Olmsted,* 283 F.3d at 435; *see also Central Bank, N.A. v. First Interstate Bank, N.A.,* 511 U.S. 164, 184-85 (1994).[11]

---

[9]     On April 6, 2005, the court in *Chamberlain* vacated its opinion upon joint motion by the parties. However, in granting the vacature, the court expressly stated that doing so did "not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather the Motion is granted simply in order to permit the parties to proceed to settlement." *Chamberlain v. Aberdeen Asset Mgmt.,* No. 02-CV-5870, at 1 (SJ) (E.D.N.Y. filed Apr. 12, 2005) (available on PACER).

[10]    Plaintiff claims that, in *Bancroft Convertible Fund v. Zico Inv. Holdings,* 825 F.2d 731, 736 (3d Cir. 1987), the Third Circuit relied on "the legislative history to the 1980 amendments" to find a private right of action under § 36(a). Opp. 14. Yet, as discussed above, "the 1980 amendments" were not to § 36(a). Moreover, *Bancroft* predates the Supreme Court's holding in *Central Bank, N.A. v. First Interstate Bank, N.A.,* 511 U.S. 164, 184-87 (1994), and is also part of the *ancien regime*. *See Olmsted,* 283 F.3d at 434 & n.4.

[11]    Plaintiff states in passing that *Young v. Nationwide Life Ins.,* 2 F. Supp. 2d 914, 925 (S.D. Tex. 1998), found that the legislative history for the "1969 amendments" shows Congress intended to imply a private right of action under § 36(a). Opp. 14. This case is also part of the *ancien regime*, and misinterprets the statute as well. As Chief Judge Rubin found in *M.J. Whitman*, the amendments to § 36 – in 1970 – added an express right of action to Section 36(b), but not to any other section of the statute, thereby confirming that the private right of action under the statute is limited to Section 36(b). 552 F. Supp. at 21-22.

Finally, Plaintiff claims that *Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002) "directly address[ed] 36(a) . . . . implying a private right of action." Opp. 15. That mischaracterizes the holding in *Struogo* which, as discussed above, was limited to deciding whether a shareholder could make a direct (instead of derivative) challenge to an alleged coercive rights offering by a closed-end mutual fund. *Id.* at 165-67. With respect to Section 36(a), the court found that Maryland law controlled on the question of whether the plaintiff's common law claims could proceed directly, and that "nothing in the general policies of the ICA . . . would militate against importing Maryland's rules of shareholder standing for claims brought for alleged violations of the ICA sections cited by the plaintiff." *Id.* at 176. The court conducted no analysis regarding the existence of a private right of action under Section 36(a), and in fact made clear that, in "deciding that the plaintiff has shareholder standing to bring direct claims for the injuries arising from coercion . . . we do not express or intend to imply any view with respect to the merits of those claims." *Id.* at 176. Indeed, the following week, the Second Circuit decided *Olmsted*, which squarely addressed whether a private right of action exists under another section of the ICA, and found it does not. *See* 283 F.3d at 432-34.

That should be the result here. Plaintiff's claim against the Trustee Defendants under Section 36(a) should be dismissed.[12]

---

[12]  Plaintiff further argues that he has stated a claim under § 36(a) because, he says, that section of the statute allows claims for any breach of fiduciary duty. Opp. 15-16. That is patently incorrect, as the statute is specifically limited to breaches involving "personal misconduct." 15 U.S.C. § 80a-35(a). As indicated in one of Plaintiff's own cases, courts have generally interpreted this language to require that fund directors have engaged in conduct that benefits themselves "at the expense of the funds," *In re Nuveen Fund Litig.*, 1996 WL 328006, at *11 (N.D. Ill. June 11, 1996), or that blindly allows an investment adviser to engage in self-dealing. *Id.* at *12. While Plaintiff's other case, *Young v. Nationwide Life Ins. Co.*, reaches a different conclusion, it does so through sleight of hand. While the case quotes a congressional committee report as support for the argument that § 36(a) reaches "*any* 'nonfeasance of duty or abdication of responsibility,'" 2 F. Supp. 2d at 927 (emphasis added), the cited report actually says that § 36(a) reaches such misconduct "*in appropriate cases.*" S. Rep. No. 91-184, at 16, *reprinted in* 1970 U.S.C.C.A.N. 4897, 4931 (emphasis added). *See also Prescott v. Allstate Life Ins. Co.,* 341 F. Supp. 2d 1023, 1029 (N.D. Ill. 2004) ("personal misconduct" requires self-dealing by investment company or other insiders) (declining to follow *Young*).

## IV. Plaintiff's Common Law Claims Are Legally Defective

Plaintiff does not contest that his common law claims are legally defective. Indeed, he has no response at all to the Trustee Defendants' arguments for dismissal of his claims for breach of fiduciary duty and negligence under state law. These claims should be dismissed.

## CONCLUSION

For the foregoing reasons, and those stated previously, all claims in the Complaint against Defendants David J. Durham, J. Joseph Hale, Jr., John E. Jaymont, David J. Gruber, and Edward Burke Carey should be dismissed with prejudice.

Respectfully submitted,

s/ Mark T. Hayden
Mark T. Hayden
Greenebaum Doll & McDonald PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202
Tel. (513) 455-7637
Fax (513) 762-7937

-and-

Thomas B. Smith
ROPES & GRAY LLP
One Metro Center
700 12th Street, NW, Suite 900
Washington, DC  20005
Tel. (202) 508-4600
Fax (202) 508-4650

*Counsel for Defendants David J. Durham,*
*J. Joseph Hale, Jr., John E. Jaymont, David J.*
*Gruber, and Edward Burke Carey*

Dated: June 2, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties.

> s/ Mark T. Hayden
> Mark T. Hayden
> Greenebaum Doll & McDonald PLLC
> 2800 Chemed Center
> 255 East Fifth Street
> Cincinnati, OH  45202
> Tel. (513) 455-7637
> Fax  (513) 762-7937